**Raul Guerrero ROSILLO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–95–423–CR.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 21, 1997.

Rehearing Overruled Aug. 21, 1997.

Jose E. Chapa, Jr., Yzaguirre & Chapa, McAllen, Larry Warner, Brownsville, for Appellant.

Rene Guerra, Dist. & County Atty., Theodore C. Hake, Asst. Crim. Dist. Atty., Edinburg, for Appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and YANEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant, Raul Guerrero Rosillo, guilty of murder and assessed his punishment at thirty years' confinement and a $10,000.00 fine. By fourteen points of error, appellant contends that the evidence is legally and factually insufficient, that the jury charge was erroneous, that the trial court commented on the weight of the evidence, that the State's final argument was harmful, and that proceeding with the punishment phase when appellant was not present was an abuse of discretion. We affirm.

By his first point of error, appellant complains that the evidence is legally insufficient to support his conviction. Appellant contends that the evidence is circumstantial and does not eliminate other reasonable hypotheses for the shooting death of Reynaldo Galvan Leal. Appellant argues that the evidence failed to prove he was criminally responsible for the act of another and that the State failed to prove all the elements of the offense beyond a reasonable doubt.

Appellant's argument concerning the reasonable hypothesis theory of circumstantial evidence is without merit. The Court of Criminal Appeals has rejected this theory for evidentiary review. *Geesa v. State,* 820 S.W.2d 154, 162 (Tex.Crim.App.1991); *Barton v. State,* 882 S.W.2d 456, 458 (Tex.App.— Dallas 1994, no pet.).

When we review a legal sufficiency of the evidence point of error, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Patrick v. State,* 906 S.W.2d 481, 486 (Tex.Crim.App.1995); *Turro v. State,* 867 S.W.2d 43, 46–47 (Tex.Crim.App.1993); *Arceneaux v. State,* 803 S.W.2d 267, 269 (Tex. Crim.App.1990). The standard is the same for both direct and circumstantial evidence cases. *Earhart v. State,* 823 S.W.2d 607, 616 (Tex.Crim.App.1991), *cert. denied,* 513 U.S. 966, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994); *Sutherlin v. State,* 682 S.W.2d 546, 548–49 (Tex.Crim.App.1984); *Vela v. State,* 771 S.W.2d 659, 660 (Tex.App.—Corpus Christi 1989, pet. ref'd). We measure the legal sufficiency of the evidence against the indictment as incorporated into the jury charge. *Fisher v. State,* 887 S.W.2d 49, 55 (Tex.Crim.App. 1994); *Benson v. State,* 661 S.W.2d 708, 715 (Tex.Crim.App.1982)(opinion on rehearing), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

The jury charge, incorporating the indictment, authorized the jury to find appellant guilty of murder if it believed beyond a reasonable doubt that he was the primary actor in the murder of Reynaldo Leal. Although appellant was not indicted as a party to the offense, the charge permitted the jury to convict appellant if the evidence reflected that he acted as a party rather than the principal actor. A trial court may charge on the law of parties even though there is no such allegation in the indictment. *See Goff v. State,* 931 S.W.2d 537, 544 n. 5 (Tex.Crim. App.1996); *Crank v. State,* 761 S.W.2d 328, 352 (Tex.Crim.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989).

According to the jury charge, the State had to prove beyond a reasonable doubt that

on or about October 26,1993, in Hidalgo County, Texas, Raul Guerrero Rosillo intentionally and knowingly caused the death of Reynaldo Galvan Leal by shooting him with a firearm. In the alternative, under the law of parties, the State had to prove beyond a reasonable doubt that on or about October 26, 1993, in Hidalgo County, Texas, Librado Hernandez [1] or Heriberto Lopez or Augustine Hernandez or an unknown assailant, intentionally or knowingly caused the death of Reynaldo Leal, by shooting him with a firearm, that Raul Rosillo knew the intent of these persons to shoot Leal, and that Rosillo acted with the intent to promote or assist these persons to shoot Leal, by aiding these persons when he reached behind his back and produced a gun.

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. § 7.01(a) (Vernon 1994). Under the law of parties, the State may charge a defendant with an offense in which he may not be the principal actor. See TEX. PENAL CODE ANN. § 7.01(b) (Vernon 1994); *Goff,* 931 S.W.2d at 544; *Romo v. State,* 568 S.W.2d 298, 300 (Tex.Crim.App.1977) (opinion on rehearing).

On October 26, 1993, Leal, Gilbert Ruiz, Patricia Ozuna and Alejandrina Visoso were the only persons in a bar in Edinburg, Texas. Noticing headlights in the parking lot at approximately 10:00 p.m., Ozuna moved to the front of the bar to see who had arrived. She observed a yellow and white pickup truck and a suburban. Two men got out of the suburban, reached behind their backs, and produced guns. At this point Ozuna ran out the back door and went to the owner's house to inform him of the situation. As she passed Leal, Ozuna told him to leave through the back door because the men had guns. A short time later, Ozuna heard what she described as "a lot of shots." After the shooting ceased, Ozuna went back to the bar and

discovered Leal lying face down in the parking lot. Subsequently, Ozuna identified appellant as the front seat passenger of the suburban and as one of the men she saw with a gun prior to the shooting.

Gilbert Ruiz recalled Ozuna yelling that somebody was coming and that Leal should leave. Ruiz looked out and saw a two-tone suburban and a pickup truck in the parking lot. He saw four men get out of the vehicles and noticed them reach behind their backs. When he saw them approach the bar, Ruiz went out the back. Ruiz said that, although Leal had been out back when the men arrived, he went back into the bar. Ruiz then heard a few shots that suddenly developed into rapid fire. He said the shots were too numerous to count and that more than one gun was involved. When the shooting ended, he walked to the front and observed three vehicles leave the parking lot at a high rate of speed. One of the vehicles was the suburban. Leal was lying face down on the ground, and blood was everywhere. Ruiz did not see guns near the victim.

Santos Leal was the first police officer [2] to respond to the shooting. Shortly after he arrived, Leal broadcast an alert for a blue and gray suburban and a red or gray pickup truck.[3] Officer Ramiro Ruiz testified that while he was backup to a traffic stop of a red pickup, he received a call about a suburban that had left a gunshot victim at the Edinburg Hospital. He responded to this call and subsequently stopped a suburban in the vicinity of the hospital. Appellant and the driver, Heriberto Lopez, were arrested on intoxication charges. No weapons were found on either person. Officer Ruiz verified that the men had left an injured person at the hospital.

Officer Rick Perez responded to the call from the hospital about a gunshot victim. The officer found that the gunshot victim was Librado Flores. Flores would not respond to Officer Perez's questioning. While at the

---

1. Also referred to as Librado F. Hernandez or Librado Flores.

2. All police officers were from the Edinburg Police Department.

3. A bulletin was also issued for a yellow or gold pickup truck which was never found. Although the police subsequently discovered that the red pickup truck was stolen, no other pertinent evidence was offered on that issue.

hospital, the officer saw an EMS unit bring in Reynaldo Leal. The officer observed that the hospital staff was unsuccessful in its attempts to revive Leal. Dr. Ruben Santos, a forensic pathologist, testified that Leal's death was caused by a bullet which entered the upper right side of the chest, pierced the heart and lungs, exited the body, and reentered the left arm, where it lodged. Dr. Santos stated that the wound was consistent with that caused by a .45 caliber weapon.

Reyes Ramirez, a criminal investigator, testified that a live .45 caliber shell was recovered from the driver's side floorboard of the suburban. In addition, seven live .45 caliber shells were discovered in Librado Flores' pants pocket, and numerous .45 caliber shells were found at the shooting scene. Officer Ramirez explained that he was present when Patricia Ozuna identified appellant as one of the men present at the time of the shooting. Mike Garza, an identification technician with the Edinburg Police Department, also testified about the .45 caliber casings, live shells, and bullets recovered from the scene. Officer Garza stated that he was present when a bullet was removed from Leal's body. He identified pictures showing that the headlight on the passenger side of the suburban had been shot out and that blood stains were found on the rear passenger side seat and window. Glass from the broken headlight was recovered from the shooting scene.

Police Chief Quirino Muñoz testified that he performed atomic absorption tests on the hands of appellant, Heriberto Lopez, and Augustine Hernandez.[4] These tests were performed to determine whether the men had gunpowder residue on their hands. Juan Antonio Rojas, a forensic chemist for the Texas Department of Public Safety, testified that he performed a lab analysis on the absorption tests. He found that the palms of appellant's hands were positive for gunpowder residue. Rojas explained that the test indicated appellant had recently fired a gun, handled a fired gun, or was in close proximity to the barrel of a gun when it was fired. He defined close proximity as one foot from the gun or being right next to the shooter.

We conclude that this evidence is sufficient to allow a jury to believe beyond a reasonable doubt that appellant was the primary shooter or that, by producing a gun from behind him, appellant was a party to the offense by lending support to another shooter. We conclude that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. We hold that the evidence is legally sufficient to support appellant's conviction. Appellant's first point of error is overruled.

By his second point of error, appellant contends that the evidence is factually insufficient to support his conviction as a party.

When we review a factual sufficiency of the evidence point of error, we review all of the evidence and set aside the verdict only if it is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Clewis v. State,* 922 S.W.2d 126, 133–34 (Tex.Crim.App.1996). Under a factual sufficiency review, we are not bound to view the evidence in the light most favorable to the prosecution. *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd). Rather, we are free to consider the testimony of all the witnesses. *Id.*

In addition to the evidence set forth above, the record reflects that no weapons were ever recovered, that no one actually witnessed the shooting, and that the parking lot was dark on the night of the shooting. Alejandrina Visoso and Gilbert Ruiz were not able to identify any of the occupants of the truck or the suburban. Visoso testified that she saw Leal with a .45 caliber gun immediately before the shooting began. She also testified that Leal fired the first shot as he exited the front door of the bar. A nine millimeter gun was recovered from a red pickup which matched the description of a vehicle seen leaving immediately after the shooting. When officers attempted to stop the suburban in which appellant was riding, the driver stopped the vehicle in the police department parking lot.

---

4. Augustine Hernandez was the driver of the red pickup truck.

Appellant volunteered to have the absorption test done on his hands. The tests were negative for the backs of appellant's hands. Mr. Rojas testified that generally a person who fires a gun will test positive on the back of the hands rather than on the palms. This is true because most of the residue is released from the barrel of the gun and attaches to exposed areas of the body. The palms, being closed around the handle, are not exposed. Absorption tests were not performed on the hands of Leal or Librado Flores.

■ After considering all of the evidence, we conclude that the verdict is not so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. Although evidence shows that the parking lot was dark, Ozuna stated positively that she recognized appellant as one of the men present at the scene with a gun. Ozuna explained that she was familiar with appellant because she had seen him on other occasions at other locations. She identified appellant shortly after the shooting as being the front seat passenger in the suburban that pulled into the bar parking lot just prior to the shooting. At the time of appellant's arrest, he was the front seat passenger in a suburban that matched the one described by witnesses. Ozuna testified that she saw appellant holding a gun, and he tested positive for powder residue from a recently fired gun. Gilbert Ruiz testified that he could not identify the men involved in the shooting, and Alejandrina Visoso testified that she did not see the men.

Regarding the absorption test results, Mr. Rojas testified that if appellant fired an automatic weapon, powder residue was less likely to be on the back of his hands. There was evidence of rapid fire, indicating that at least one automatic weapon was used in the shooting. Mr. Rojas also explained that the residue found on appellant's palms could have escaped through the firing pin and through gaps in the gun.

We conclude that the evidence is sufficient for a jury to find that appellant did the shooting, or was a party to the shooting. We hold that the evidence is factually sufficient to support appellant's conviction. Appellant's second point of error is overruled.

Appellant contends that there is no evidence that Librado Hernandez, Heriberto Lopez, Augustine Hernandez, or an unknown assailant participated in the shooting. By his third point of error, appellant complains that the trial court erred in overruling his objection to the inclusion of a party instruction in the jury charge. By his fourth point of error, appellant complains that the trial court erred in overruling his objection to the application paragraph of the charge on guilt or innocence.

■ When the evidence is sufficient to support both primary and party theories of liability, the trial court does not err in submitting an instruction on the law of parties. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex. Crim.App.1994); *Webb v. State,* 760 S.W.2d 263, 267, 267, 275 (Tex.Crim.App.1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989). Evidence is sufficient to convict under the law of parties if the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement. *Ransom,* 920 S.W.2d at 302; *Cordova v. State,* 698 S.W.2d 107, 111 (Tex.Crim.App.1985), *cert. denied,* 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986).

■ In determining whether an individual is a party to an offense and bears criminal responsibility, the court may look to events before, during, and after the commission of the offense. *Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App.1987). Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence. *Id.* Circumstantial evidence may be sufficient to show that one is a party to the offense. *Id.*

■ Because our penal code generally criminalizes conduct of individuals, the State is required to properly instruct the jury if it proceeds upon a parties theory. *Goff,* 931 S.W.2d at 544. In order for the jury to be authorized to convict one as a party, the law of parties must be included in the application paragraph. *Walker v. State,* 823 S.W.2d 247, 248 (Tex.Crim.App.1991), *cert. denied,* 503

U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). A charge which contains an abstract paragraph on a theory of law, but does not apply the law to the facts, deprives the defendant of a fair and impartial trial. *Jones v. State*, 815 S.W.2d 667, 670 (Tex.Crim.App. 1991).

The evidence indicated that appellant was present when Leal was shot and killed. Appellant and three others were observed to have guns. All spent and live ammunition recovered from the crime scene were from .45 caliber weapons. The autopsy report shows that Leal died from a wound caused by a .45 caliber bullet. A live .45 caliber shell was recovered from the driver's side of the suburban in which appellant was riding at the time of his arrest. Heriberto Lopez, the driver of the suburban, was also arrested. The suburban matched the description of a vehicle seen leaving the crime scene at a high rate of speed, and it was the vehicle that left a gunshot victim at the hospital shortly after the shooting. Librado F. Hernandez was shot during the shoot out and taken to the hospital. Seven live .45 caliber shells were found in his pants pockets. Augustine Hernandez was subsequently arrested while driving a red pickup truck similar to the one which left the parking lot immediately after the shooting. A yellow or gold pickup truck was observed at the crime scene, but the truck was never located after the shooting, leading to the possible conclusion that unknown persons may have been involved.

 We conclude that this evidence is sufficient to establish that appellant was present when Leal was shot by someone and that, by showing a gun, appellant aided that person in the commission of the offense. We hold that the trial court did not err by including party instructions in both the abstract paragraph on theory of law and in the application paragraph. We overrule appellant's third and fourth points of error.

By his fifth point of error, appellant contends that the trial court erred in overruling his requested instruction on mere presence. The orally requested instruction stated as follows:

> We're asking that the Court initially instruct the jury that follows and in connec-

tion—in this connection, however, the mere presence of a party at or near the scene of the commission of an offense does not make him a party to the offense. Likewise, mere knowledge that an offense is about to be committed by others will not make him a party to the offense nor will his knowledge that the offense is being committed by others or has been—or has been committed by others nor will his failure to give alarm, his silence or in action [sic] make him a party to the offense.

Essentially the same instruction was requested by the appellant in *LeDuc v. State*, 593 S.W.2d 678, 683 (Tex.Crim.App.1979). The Court of Criminal Appeals held that the requested instruction was substantially the same or was adequately covered by the charge given, and that no harm was shown. *Id.* at 684.

 In the instant case, the jury was instructed as follows:

> The mere presence of defendant, RAUL GUERRERO ROSILLO, at the shooting, if any, would not constitute him a party to the offense charged, and if you should find from the evidence beyond a reasonable doubt that LIBRADO HERNANDEZ or HERIBERTO LOPEZ or AUGUSTINE HERNANDEZ or an UNKNOWN ASSAILANT did then and there intentionally or knowingly kill the said Reynaldo Galvan Leal by shooting him with a firearm, as aforesaid, but you further find and believe from the evidence, or you have a reasonable doubt thereof, that the defendant, RAUL GUERRERO ROSILLO, did not act with intent to promote or assist the commission of the said offense of shooting and killing Reynaldo Galvan Leal, if any, by aiding LIBRADO HERNANDEZ OR HERIBERTO LOPEZ OR AUGUSTINE HERNANDEZ or AN UNKNOWN ASSAILANT in the commission of said offense, then you will find defendant, RAUL GUERRERO ROSILLO, not guilty of murder.

We find that the submitted charge is substantially the same or adequately covered the requested charge. In addition, we find that the submitted charge tracks, to a great ex-

tent, the language of section 7.02(a)(2) of the Penal Code, which is sufficient. *See Davis v. State,* 651 S.W.2d 787, 792 (Tex.Crim.App. 1983). Moreover, when asked by the trial court, appellant was unable to provide authority for the requested charge. On appeal also, appellant failed to provide authority in support of his requested charge. We overrule appellant's fifth point of error.

By his sixth point of error, appellant contends that the trial court committed fundamental error when it orally instructed the jury as follows:

When you're handling the evidence in the case be careful when handling the—the gun that was admitted in evidence. Do not insert the clip into the gun.

The gun referred to is the nine millimeter weapon recovered from the red pickup truck.

■ The trial court is required to deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp. 1997). Clearly, instructing the jury not to insert the clip into the gun while inspecting it is not a *law* applicable to the case. We conclude that the admonishment was a safety precaution and, therefore, need not be in writing. We overrule appellant's sixth point of error.

By his seventh point of error, appellant reasserts his sixth point of error and further contends that the error is fundamental because the instruction emphasized the State's closing argument.

The comments of which appellant complains were uttered toward the end of the State's closing argument and immediately preceded the trial court's admonishments to the jury. The record reflects that the prosecutor and trial court stated as follows:

Prosecutor: We cannot show you that this 9 millimeter was used at all. But you go back there and do not put the clip in this gun. For those of you that are not familiar with weapons, look at the size of this gun, a 9 millimeter. And all the evidence is, is that a .45 was out there. A bigger gun than this. Look at the size of the hole. It's a big gun. When a person uses one of these guns they mean business, they mean to kill. This defendant and these other guys meant to kill him and they did and now they need to answer for what they did. Go back there, do your duty, find him guilty as charged. Thank you very much.

Trial Court: Members of the jury, let me just give you a couple more instructions. When you're handling the evidence in this case, be careful when handling the—the gun that was admitted in evidence. Do not insert the clip into the gun. Also, do not deliberate during the lunch hour. Arrangements have been made to escort you—my bailiff will escort you to lunch. Do not be[gin] deliberations until after you return to the jury room to begin deliberating in this case.

Appellant argues that the trial court's instruction was a comment on how dangerous the gun is and reiterated the State's argument which was intended to frighten the jury. This argument is without merit.

■ To constitute reversible error, a trial court's comment must be such that it is reasonably calculated to prejudice the defendant's rights or to benefit the State. *Marks v. State,* 617 S.W.2d 250, 252 (Tex.Crim.App. 1981).

To understand the nature of the prosecutor's and trial court's comments, the language must be put into the context of the entire proceedings. When the State introduced the gun through the testimony of Officer Jorge Lopez, the prosecutor stated to the judge, "I know you have special rules about handguns." The judge then asked the officer to verify that the gun was unloaded. Subsequently, the judge stated, "The only other requirement I have, Officer—and you're familiar with that—is to try not to point the weapon—that weapon right there—to anyone

here in the courtroom." Clearly, the State was aware of the trial court's concern for the safe handling of weapons in the courtroom.

The State's argument was intended to remind the jury that the nine millimeter gun was not the weapon that caused Leal's death. In addition, the State was informing the jury that it could handle the gun in order to understand that a .45 caliber is larger than a nine millimeter. His brief comment about the clip during closing argument was nothing more than a reiteration of the court's rule—make sure the gun is unloaded.

When placed in context, the trial court's instruction was obviously one of several jury procedures not related to the law of the case. These instructions need not be written. We conclude that the instruction was not a comment on the evidence and not intended to frighten the jury. We overrule appellant's seventh point of error.

By his eighth and ninth points of error, appellant complains that harmful error and egregious error, respectively, were caused by the trial court's charge which failed to require the jury to find all the elements of the offense. In particular, appellant contends that the application paragraph did not require the jury to find the element of aiding.

The portion of the charge applying the law of parties required the State to prove the following elements beyond a reasonable doubt:

1. that on or about October 26, 1993,

2. in Hidalgo County, Texas,

3. Librado Hernandez or Heriberto Lopez or Augustine Hernandez or an unknown assailant,

4. intentionally or knowingly caused the death of Reynaldo Leal,

5. by shooting him with a firearm,

6. that Raul Rosillo knew the intent of these persons to shoot Leal, and

7. that Rosillo acted with the intent to promote or assist these persons to shoot Leal,

8. by aiding these persons when he reached behind his back and produced a gun.

In order to convict appellant as a party to the offense, the jury had to find each of these elements beyond a reasonable doubt. If the jury did not believe that reaching behind one's back for a gun was aiding, then the jury could not convict appellant as a party to the murder of Leal. We overrule appellant's eighth and ninth points of error.

By his tenth and eleventh points of error, appellant complains that a portion of the State's closing argument presented fundamental error and could not have been cured by an instruction to disregard.

In *Cockrell v. State,* the Court of Criminal Appeals held that an appellant must object to a jury argument and pursue the objection to an adverse ruling in order to complain on appeal. 933 S.W.2d 73, 89 (Tex. Crim.App.1996), *cert denied,* — U.S. —, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997). Because appellant did not raise the matter before the trial court, we hold that appellant did not preserve error on these complaints. We overrule appellant's tenth and eleventh points of error.

By his twelfth point of error, appellant contends that the State, in its closing argument, committed fundamental error by commenting on appellant's failure to testify.

The prosecutor made the following comment during closing argument:

I didn't shoot, he never said that. That's what the defendant said—I mean the defense attorney said that.

A comment upon a defendant's failure to testify violates the Fifth Amendment of the United States Constitution. *Moore v. State,* 849 S.W.2d 350, 351 (Tex. Crim.App.1993). When addressing a complaint of improper comments on a defendant's failure to testify, we review the language from the standpoint of the jury. *Goff,* 931 S.W.2d at 548; *Staley v. State,* 887 S.W.2d 885, 895 (Tex.Crim.App.1994), *cert. denied,* 514 U.S. 1020, 115 S.Ct. 1366, 131 L.Ed.2d 222 (1995); *Swallow v. State,* 829 S.W.2d 223, 225 (Tex.Crim.App.1992).

The fact that the language might be construed as an implied or indirect allusion to a defendant's failure to testify is not

sufficient. *Goff*, 931 S.W.2d at 548; *Staley*, 887 S.W.2d at 895. Argument will constitute a comment upon the defendant's failure to testify if the language used is manifestly intended or is of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Moore*, 849 S.W.2d at 352; *Caldwell v. State*, 818 S.W.2d 790, 800 (Tex.Crim.App.1991), *cert. denied*, 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992). The facts and circumstances of each case must be analyzed to determine whether the language is of such a character as to direct the jury to the defendant's failure to testify. *Moore*, 849 S.W.2d at 352; *Montoya v. State*, 744 S.W.2d 15, 35 (Tex.Crim.App.1987). The argument is improper if it directs the jury's attention to an absence of testimony only the defendant could supply. *Moore*, 849 S.W.2d at 352; *Swallow*, 829 S.W.2d at 225.

During closing argument, appellant's attorney explained the evidence and argued why the jury should believe appellant was innocent. In one instance, counsel stated:

Number—another one, he volunteered upon questioning, Canino [sic] Muñoz, you heard him, that Mr. Rosillo volunteered for you to do those tests? Yes. Yes, he volunteered. He volunteered, give me those tests, I didn't shoot.

On rebuttal, the State attacked each one of the reasons given by appellant's attorney. The prosecutor argued as follows:

They want you to believe Rosillo drove to the hospital. They drove the killer to the hospital. Rosillo wasn't even the driver, he was the passenger. But he did take— he was with them when they took an injured person from the scene to the hospital, that places him there at the scene. They want you to believe Rosillo drove to the P.D., but Rosillo, again, wasn't the driver, it was the other guy driving. So, don't fall for that. He volunteered to take the test. I didn't shoot, he never said that. That's what the defendant said—I mean the defense attorney said that. Never in evidence.

█ We conclude that the State was not commenting on the fact that the defendant did not testify. The State merely pointed out that Chief Muñoz's testimony was only that appellant volunteered, and it did not reference any comments attributable to appellant. The State's argument was not of such character that the jury would be directed to appellant's failure to testify. We overrule appellant's twelfth point of error.

█ By his thirteenth point of error, appellant contends that the State committed fundamental error when the prosecutor, at the punishment phase, added new and harmful facts about plea bargains. Because appellant did not raise the matter before the trial court, we hold that no error is preserved for our review. *Cockrell*, 933 S.W.2d at 89. We overrule appellant's thirteenth point of error.

By his fourteenth point of error, appellant contends that the trial court abused its discretion in proceeding with the punishment phase of the trial when he was not present.

Article 33.03 of the Code of Criminal Procedure provides that the defendant must be personally present in felony cases. TEX. CODE CRIM. PROC. ANN. art. 33.03 (Vernon 1989). This is true unless the defendant voluntarily absents himself after pleading to the indictment, or after the jury has been selected when the trial is before a jury. *Id.* In that instance, the trial may proceed to its conclusion. *Id.*

█ In most instances, the appellate court will have to determine, from hindsight, the validity of the trial court's determination that the defendant's absence was voluntary. *Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim.App.1984). The defendant must provide evidence to refute the trial court's determination, or we will not disturb the trial court's finding. *Id.*

█ After the jury returned a guilty verdict on October 24, 1994, the trial court set appellant's bond at $100,000.00 and scheduled the punishment phase to begin at 9:30 the next morning. When the case was called the next morning, appellant was absent. Appellant's counsel informed the trial court that he had made efforts to locate appellant by calling telephone numbers available in appellant's file. The State informed the trial court

that Maria Rivera had signed appellant's bond and that she apparently knew of appellant's intent to be absent from court. Appellant's counsel agreed with that information, adding that Rivera said appellant was not going to appear because an injustice was done. The trial court then called for the jury to be brought in, and the punishment phase proceeded. Appellant's counsel did not object to proceeding or seek a continuance. When appellant filed a motion for new trial, he did not complain of the trial court's decision. Nor did he raise the issue at the hearing on the motion for new trial. Based on the record before us, we conclude that the trial court did not abuse its discretion in finding that appellant's absence from the punishment phase was voluntary. We overrule appellant's fourteenth point of error.

We affirm the judgment of the trial court.