NUMBER 13-06-261-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MATTHEW TREVINO, A/K/A MATTHEW LOPEZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 148th District Court 

of Nueces County, Texas

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Justice Rodriguez



 A jury convicted appellant, Matthew Trevino, a/k/a Matthew Lopez, of
aggravated assault. See Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2006). 
He was sentenced to fifteen years in prison. By two points of error, appellant
contends the trial court erred in overruling his motion for a directed verdict of acquittal
and in allowing improper rebuttal testimony over appellant's objections. We affirm.

I. Denial of Motion for Directed Verdict

 In his first point of error, appellant asserts the trial court erred by not granting
his motion for a directed verdict. Appellant specifically challenges the sufficiency of
the evidence to support the jury's determination that he committed the aggravated
assault.

 A. Standard of Review and Applicable Law
 

 A challenge to a trial court's denial of a motion for a directed verdict is treated
as a challenge to the legal sufficiency of the evidence. Williams v. State, 937 S.W.2d
479, 482 (Tex. Crim. App. 1996); Lemoine v. State, 85 S.W.3d 385, 387 (Tex.
App.--Corpus Christi 2002, pet. ref'd); Hime v. State, 998 S.W.2d 893, 896 (Tex.
App.-Houston [14th Dist.] 1999, pet. ref'd). An appellate court, viewing the evidence
in the light most favorable to the prosecution, reviews the legal sufficiency of the
evidence by determining whether any rational juror could have found the essential
elements of the offense beyond a reasonable doubt. Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 9 S.Ct.
2781, 61 L.Ed.2d 550 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim
App. 2006); Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); Rosillo
v. State, 953 S.W.2d 808, 811 (Tex. App.--Corpus Christi 1997, pet. ref'd).

 When reviewing the legal sufficiency of the evidence, an appellate court must
defer to the jury as to the weight and credibility given to the witnesses' testimony. 
See Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). It is the jury's
sole function to assign credibility to the witnesses, assess the strength of the
evidence, and resolve conflicts of fact. Martinez v. State, 198 S.W.3d 36, 50 (Tex.
App.--Corpus Christi 2006, no pet.).

 We measure the legal sufficiency of the evidence by the elements of the offense
as defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234,
240 (Tex. Crim. App. 1997). "Such a charge would accurately set out the law, would
be authorized by the indictment, and would not unnecessarily increase the State's
burden of proof." Id. Under a hypothetically correct jury charge, the elements of the
offense of aggravated assault are: (1) appellant, (2) intentionally or knowingly, (3)
threatened another with imminent bodily injury, (4) by using or exhibiting a deadly
weapon. Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2006).B. Analysis

 By his first issue, appellant claims the State failed to prove his identity as the
assailant, one of the elements of aggravated assault. See id. He claims the evidence
is legally insufficient to prove his identity beyond a reasonable doubt because the
witnesses could not identify him as the shooter. (1)

 Tommy Thomas, the victim, testified that he did not see the shooter's face. 
However, he testified that the man who fired a shot at him identified himself as "Matt,
Brenda Lopez's brother." Thomas dated Lopez for about one and half years. He
testified that he met various members of Lopez's family, including her brother
Matthew. He further testified that he knew only one Brenda with a brother named
Matt. Although appellant contends that Thomas could not identify him as the shooter,
Thomas testified as follows:

 Q: Did you immediately - well, you saw part of the person but not all
of the face. Is that - 


 A: I just saw like his face, and that was it. Like, I couldn't see it
really good.


 Q: Okay. So can you or can you not identify him?


 A: Oh, yes, I can identify him.


 Q: How is that?

 A: He's got a tattoo on his neck, a spider; and you can tell by his
face.


 Q: But could you see that?

 A: No, you couldn't see it.

Thomas also picked appellant from a photo lineup.

 In addition, Catherine Jewel, Thomas's next door neighbor who witnessed the
incident, testified that appellant was the man pointing the gun at Thomas. She
identified appellant as the shooter, testifying as follows:

 Q: Okay. You said you looked at him in the eyes?

 A: Only when I was standing at the door looking at him. Had the
man put sunglasses on, I could not identify him, no. It was his
eyes.

 Q: Had you ever seen that person before?

 A: No, ma'am.

 Q: Is that person in the courtroom today?

 A: It's the eyes. And if I saw him walking down the street, I would
not be able to identify him.


 [Defense Counsel]: I'm sorry. I did not understand
what she said.

 

 Witness: It is his eyes. If he was walking
down the street, I would not be
able to identify the man. I had
never seen him before and not
again until today. It's his eyes.

 

 [Prosecutor]: Your Honor, may the record
reflect that the witness has
identified the Defendant?

 

 The Court: The record will so reflect.

Jewel also testified that during the questioning by Senior Officer Ralph Lee, she
identified appellant "off the record" from a photo lineup. She stated, "I believe it's this
gentleman." Then Officer Lee responded, "You're right."

 Officer Lee testified, however, that Jewel was unable to identify appellant in the
photo lineup and that he marked in his report, "negative results," a notation he uses
when a witness is unable to identify an assailant, not when a witness refuses to
cooperate. Officer Lee further testified that he did not have an independent
recollection of his interview with Jewel when he showed her the photo lineup. On
cross-examination, Officer Lee testified as follows regarding the photo lineup:

 Q: All right. Is there - and if she had said to you off the record, what
would you have documented in your report?


 A: It depended on what happened after she told me I need to tell you
something off the record.


 Q: Okay.


 A: Where the conversation went.


 Q: Okay. If she would have told you, off the record, yes, I can
identify him but I'm not going to identify him on the record, what
would - how would you have documented that?


 A: I don't know. I don't know what - she would have either told me
who she identified or we would have had problems. She would
either tell me or she was going to go before the grand jury. And
that's what I would have told her.


 Q: For obstruction of justice?


 A: No, to give testimony before the grand jury. If she was not going
to tell me, she was going to have to tell the grand jury. And the
grand jury if they choose to do so can do something to her. I
can't.

 The jury, not the trial court, decides the weight given to the credibility of the
witnesses and their testimony, and resolves conflicts in the evidence. Adelman v.
State, 828 S.W.2d 418, 423 (Tex. Crim. App. 1992) (en banc); Martinez, 198 S.W.3d
at 50. Therefore, the jury was free to believe Thomas's testimony that he could
identify appellant as the shooter. See Martinez, 198 S.W.3d at 50. The jury was also
free to believe Jewel's testimony that she recognized appellant's eyes and that she
identified appellant in a photo lineup off the record. See id.

 Viewing the evidence in the light most favorable to the prosecution, we
conclude that there was sufficient evidence for a jury to find that appellant committed
the offense. See Hooper, 214 S.W.3d at 13; Rosillo, 953 S.W.2d at 811. The trial
court did not err by denying appellant's motion for directed verdict. We, therefore,
overrule appellant's first point of error.

II. Rebuttal Testimony

 In his second point of error, appellant generally complains that the trial court
erred in allowing rebuttal testimony over appellant's objection. However, in
accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will only
consider contentions that are supported by clear and concise arguments with
appropriate citations to authorities and the record. Tex. R. App. P. 38.1(h); Rhoades
v. State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (en banc). Appellant has
provided no authority to support this contention and, thus, has failed to preserve error. 
See Tufele v. State, 130 S.W.3d 267, 271 (Tex. App.-Houston [14th Dist.] 2002, no
pet.). Because this issue is inadequately briefed, we overrule appellant's second point
of error.

III. Conclusion

 We affirm the judgment of the trial court.

 

 NELDA V. RODRIGUEZ

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 27th day of September, 2007.
1. Appellant also contends the testimony is factually insufficient to support the trial court's denial
of his motion for directed verdict. However, we treat a challenge to a trial court's denial of a directed
verdict as a challenge to the legal sufficiency of the evidence. Williams v. State, 937 S.W.2d 479, 482
(Tex. Crim. App. 1996) (stating "The court's duty is not to reweigh the evidence from reading a cold
record but to position itself as a final, due process safeguard ensuring only the rationality of the
factfinder."). Therefore, we need not address appellant's factual sufficiency contentions.