

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00045-CR

DANIEL THOMAS BARNES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 48,046-A

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

O P I N I O N

Daniel Thomas Barnes was convicted of burglary of a habitation in a bench trial. After the State introduced evidence of prior convictions, the trial court found the State's enhancement allegation true, sentenced Barnes to forty years' imprisonment, and ordered him to pay $2,100.00 for his court-appointed counsel. On appeal, Barnes argues that the evidence is legally insufficient to support the trial court's findings that he was guilty of the offense and was the same person who committed several prior offenses alleged by the State.

We conclude that legally sufficient evidence supported the trial court's finding that Barnes was guilty as a party to the offense of burglary of a habitation. We further conclude that legally sufficient evidence linked Barnes to a majority of the prior convictions introduced at punishment. However, we find that Barnes was not linked to two prior Tennessee judgments of conviction by sufficient evidence. Because we cannot say that we have fair assurance that the Tennessee convictions did not contribute to his punishment, we reverse Barnes' sentence and remand for a new trial on punishment only.[1]

I.     Background

The evidence at trial established that the owner of the burgled home was Michael Minshew. Minshew's neighbor, Marlon Hardeman, witnessed a portion of the crime. Hardeman testified that he almost ran over a Caucasian lady with "streaks of light blue in her hair" as he was leaving for work. When he returned to the neighborhood with coworkers, he saw the same lady and a small

_____

[1]We also note that the trial court assessed $2,100.00 in attorney fees for Barnes' court-appointed attorney even though Barnes is indigent.

Caucasian male, with lightning bolt tattoos on his throat, standing beside Minshew's Dallas Cowboy golf cart. The golf cart had "a blanket with . . . a lot of stuff in it just bundled up." Hardeman said that a red, four-door car was on the side of the road close to the golf cart. Because he knew the golf cart was Minshew's, Hardeman became suspicious, recorded the license plate number of the red car, and called Minshew before returning to work.

According to Minshew, Hardeman reported on the phone call that the couple was "loading things off [his] golf cart into a red car." Minshew called the police and rushed home to find that his windows had been beaten in, there was "a hole in [his] back door," items throughout the home were destroyed, and blue "2-cycle oil" had been poured all over the home. Minshew noticed that his family's social security cards, birth certificates, and passports were stolen, along with the golf cart, clothes, jewelry, rifles, binoculars, video games, computers, iPhones, iPads, and other electronics.

Cedric Davis, a patrol officer with the Longview Police Department (LPD), responded to Minshew's call, interviewed Hardeman, and caused dispatchers to issue a warning to police to be on the lookout for the suspect vehicle Hardeman described. LPD Officer Keven Nichols testified that officers quickly located a red 2005 Chevrolet Cavalier with a matching license plate in a nearby park. The Cavalier was packed full of items stolen from Minshew's home.

Brent Creacy, another LPD officer, testified that the suspects, Barnes and Cassidy Taylor, were arrested close by. The trial court saw that Barnes had lightning bolts tattooed on his neck. According to Creacy, Barnes admitted that the red Cavalier belonged to him. Taylor led Creacy to the stolen golf cart. Barnes' fingerprints were found on the red Chevrolet packed with

3

Minshew's stolen items, and Barnes referred to the car as his in both his interview with law enforcement and a recorded conversation with his mother. LPD Investigator Gabriel Downs testified that Barnes "wanted to make a deal" to protect Taylor, his girlfriend. After hearing this evidence, the trial court found Barnes guilty of burglary of a habitation as a party to the offense.

## II. Legally Sufficient Evidence Supports Barnes' Conviction as a Party to the Offense

Barnes argues that insufficient evidence supported a finding that he entered Minshew's home. We disagree because we find that legally sufficient evidence supports the trial court's finding that Barnes was guilty as a party to the offense.

### A. Standard of Review

In evaluating legal sufficiency of the evidence, we review all of the evidence in the light most favorable to the trial court's judgment to determine whether any rational fact-finder could have found the essential elements of the charged offense. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of *Brooks*, while giving deference to the responsibility of the fact-finder "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When faced with conflicting evidence, we presume that the trial court resolved any such conflict in a way that supports the judgment, and we defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

4

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. Here, the State alleged that Barnes entered a habitation without the effective consent of the owner, Minshew, with the intent to commit theft.[2]

**B.      Party Liability**

Barnes argues that nothing showed he entered Minshew's home. However, the court found that Barnes was guilty as a party to the offense.[3] "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a). "A person is criminally responsible for an offense committed by the conduct of another if[,] . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2).

"While an agreement of the parties to act together in a common design seldom can be proved by direct evidence, reliance may be had on the actions of the parties, showing by either

---

[2]A person commits the offense of burglary if, without the effective consent of the owner, the person "enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault." TEX. PENAL CODE ANN. § 30.02.

[3]"It is well settled that the law of the parties need not be pled in the indictment." *Williams v. State*, 410 S.W.3d 411, 414 (Tex. App.—Texarkana 2013, no pet.) (citing *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005); *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002)).

direct or circumstantial evidence, an understanding and common design to do a certain act." *Barnes v. State*, 62 S.W.3d 288, 297 (Tex. App.—Austin 2001, pet. ref'd). Thus, circumstantial evidence may be sufficient to show that a person is a party to the offense. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987). When "determining whether an individual is a party to an offense and bears criminal responsibility, the court may look to events before, during, and after the commission of the offense." *Id.*

### C.    Analysis

Barnes argues that the State was required to put forth some proof that he entered Minshew's home with Taylor. He is incorrect. *See Rollerson v. State*, 227 S.W.3d 718, 725–26 (Tex. Crim. App. 2007). "[A] defendant's unexplained [exclusive] possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary." *Id.* at 725 (citing *Poncio v. State*, 185 S.W.3d 904 (Tex. Crim. App. 2006)). Where the possession of the stolen property is not exclusive, the permitted inference by the fact-finder is that the person in possession of the property was a party to the offense, even where there is no evidence that the person entered the burglarized premises. *See Rollerson*, 227 S.W.3d at 726.

"Evidence is sufficient to convict under the law of parties if the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement." *Rosillo v. State*, 953 S.W.2d 808, 814 (Tex. App.—Corpus Christ 1997, pet. ref'd) (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g)). In addition to the fact that Barnes was found in possession of the stolen property a short time after Minshew

reported the burglary, Hardeman saw Barnes at the scene of the crime with his girlfriend loading Minshew's property, which bore his fingerprints, into his car.

Viewing the evidence in a light most favorable to the verdict, we conclude that legally sufficient evidence supported the trial court's finding that Barnes was a party to the offense.

## III.    Barnes Was Not Linked to the Tennessee Convictions

Next, Barnes argues that the evidence was legally insufficient to link him to alleged prior offenses and, therefore, that the trial court erred in admitting them into evidence at punishment.

### A.    Standard of Review

"To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists[4] . . . and (2) the defendant is linked to that conviction." *Henry v. State*, 466 S.W.3d 294, 301 (Tex. App.—Texarkana 2015), *aff'd*, 509 S.W.3d 915 (Tex. Crim. App. 2016) (quoting *Reese v. State*, 273 S.W.3d 344, 347 (Tex. App.—Texarkana 2008, no pet.) (quoting *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007))). "No specific document or mode of proof is required to prove these two elements." *Id*. (quoting *Flowers*, 220 S.W.3d at 921). "In proving prior convictions, identity often includes the use of a combination of identifiers, and '[e]ach case is to be judged on its own individual merits.'" *Id*. (quoting *Littles v. State*, 726 S.W.2d 26, 30–32 (Tex. Crim. App. 1984) (op. on reh'g)). "The totality of the circumstances determines whether the State met its burden of proof." *Id*. (citing *Flowers*, 220 S.W.3d at 923).

---

[4]As the Texas Court of Criminal Appeals has recognized, "evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means" to prove a prior conviction for enhancement purposes. *Henry*, 509 S.W.3d at 918 (quoting *Flowers*, 220 S.W.3d at 921).

"[T]he proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle." *Flowers v. State*, 220 S.W.3d 919, 923 (Tex. Crim. App. 2007) (quoting *Human v. State*, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988)). "The pieces standing alone usually have little meaning." *Id.* (quoting *Human*, 749 S.W.2d at 836). "However, when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or convictions." *Id.* (quoting *Human*, 749 S.W.2d at 836). The trier of fact is required to fit the pieces of the jigsaw puzzle together and weigh the credibility of each piece. *Id.* "Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle." *Id.* If the existence of the conviction and its link to the defendant can be found beyond a reasonable doubt, "then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Id.* "The standard of review for evaluating the sufficiency of evidence requires that the appellate court 'consider all the evidence in the light most favorable to the trial court's finding.'" *Henry*, 509 S.W.3d at 919 (quoting *Wood v. State*, 486 S.W.3d 583, 589 (Tex. Crim. App. 2016)).

**B.      Analysis**

The evidence at trial established Barnes' birthdate, social security number, and Texas state identification (ID) number. Barnes complains of the State's use of Exhibits 18–24. The record established that: (1) Exhibit 18, a certified copy of a judgment from Missouri against "Daniel T

Barnes," was linked to Barnes by name and birthdate;[5] (2) Exhibit 19, a certified copy of an Illinois judgment against "Daniel T Barnes," was linked to Barnes by a felony complaint bearing the same cause number, which depicted Barnes' birthdate and social security number; (3) Exhibit 20, certified copies of a Panola County order of deferred adjudication, judgment revoking community supervision, and judgment of conviction entered against "Daniel Thomas Barnes," were linked to Barnes by name and Texas state ID number; (4) Exhibit 21, a certified copy of a judgment of conviction from Gregg County entered against "Daniel Thomas Barnes," was linked to Barnes by name and Texas state ID number; and (5) Exhibit 24, a certified copy of a Gregg County judgment against "Daniel Thomas Barnes," was linked to Barnes by name and date of birth.[6] We find that based on this evidence, a reasonable fact-finder could conclude that Barnes was the person convicted of the prior offenses in Exhibits 18–21 and 24.

However, Exhibits 22 and 23, which were Tennessee "General Sessions Disposition[s]," were not sufficiently linked to Barnes. The Tennessee judgments showed that "Daniel Thomas Barnes" was placed on supervised probation for theft and forgery offenses. They were linked to Barnes only by name and signature. There was no testimony from the sponsoring witness regarding a signature analysis or any other factors that could link Barnes either to the State of Tennessee or the Tennessee judgments.

Unless the defendant's name is unique, a name and signature are insufficient by themselves to link a defendant to a prior conviction. *Strehl v. State*, 486 S.W.3d 110, 114 (Tex. App.—

---

[5]The social security number on the paperwork comprising Exhibit 18 was one number off from Barnes' social security number.

[6]Although some of the exhibits contained thumbprints, no fingerprint analysis was conducted.

9

Texarkana 2016, no pet.) ("Evidence that the defendant merely has the same name as the person previously convicted is not sufficient to satisfy the prosecution's burden.") (citing *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986)); *see Cain v. State*, 468 S.W.2d 856, 859 (Tex. Crim. App. 1971), *overruled on other grounds by Littles v. State*, 726 S.W.2d 26 (Tex. Crim. App. 1984) ("We conclude that under the circumstances of this case, where handwriting samples are introduced without expert testimony and the [fact-finder] alone must make the comparison, and there is no other evidence to connect the appellant with the prior convictions, such identity has not been sufficiently established."); *Prihoda v. State*, 352 S.W.3d 796, 810 (Tex. App.—San Antonio 2011, pet. ref'd); *see also Henry v. State*, 509 S.W.3d 915, 919 (Tex. Crim. App. 2016) ("even if the name on the judgment matched that of the defendant, a certified judgment on its own is insufficient" to link the defendant to the prior offense); *Smith v. State*, 489 S.W.2d 920, 922 (Tex. Crim. App. 1973); *Rosales v. State*, 867 S.W.2d 70, 74 (Tex. App.—El Paso 1993, no pet.) (trial court erred in admitting prior judgment based on signature comparison).[7]

In *Benton v. State*, we found that a jury was free to compare signatures on prior convictions with the defendant's known signature in order to determine whether the State sufficiently linked the defendant to the prior judgments where other evidence, like a unique name, date of birth, and listing of the defendant's mother's name on the judgments, also linked the defendant to the prior offenses. *Benton v. State*, 336 S.W.3d 355, 357, 358 (Tex. App.—Texarkana 2011, pet. ref'd). This is not such a case. Because Barnes' only link to the prior Tennessee judgments are his

---

[7]The State asked the trial court to take judicial notice of its file and compare Barnes' signature on the Tennessee judgments to the file because the State was "pretty sure that Mr. Barnes' signature [showed] up somewhere in there." However, the trial court did not indicate that it took notice of its file, and "the record does not reflect that the trial judge made an actual comparison of the signatures." *Prihoda*, 352 S.W.3d at 809.

relatively common name and a signature, we find that the State did not meet its burden to prove that Barnes was the person who had committed the prior Tennessee offenses. Therefore, we sustain Barnes' complaint.

### C.       Barnes Was Harmed by the Admission of the Tennessee Offenses

"The erroneous admission of extraneous-offense evidence is not constitutional error." *James v. State*, 555 S.W.3d 254, 261 (Tex. App.—Texarkana 2018, pet. dism'd, untimely filed) (quoting *Graves v. State*, 452 S.W.3d 907, 914 (Tex. App.—Texarkana 2014, pet ref'd)). "Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that an appellate court must disregard a nonconstitutional error that does not affect a criminal defendant's 'substantial rights.'" *Id*. (quoting TEX. R. APP. P. 44.2(b)). "An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence on the jury's verdict." *Id*. (quoting *Graves*, 452 S.W.3d at 914). "We will not reverse based on nonconstitutional error if, after we look at the whole record, we conclude that there is 'fair assurance that the error did not influence the [fact-finder], or had but a slight effect.'" *Id*. (quoting *Graves*, 452 S.W.3d at 914).

"A harm analysis may include overwhelming evidence of guilt." *Id*. Here, we begin our analysis with the assumption that Barnes' evidence of guilt was overwhelming. His second-degree offense for burglary of a habitation was punishable in the first-degree felony range as a result of the trial court's finding of true to the State's enhancement allegation. Thus, Barnes could have been sentenced "for life or for any term of not more than 99 years or less than 5 years." TEX. PENAL CODE ANN. § 12.32(a). Barnes was sentenced to forty years' imprisonment. At first blush,

11

it appears that Barnes' Tennessee convictions could have had but a slight effect on his sentence. Yet, the record indicates otherwise.

None of Barnes' prior offenses of forgery, theft, possession of drugs, and criminal trespass were violent in nature. In assessing punishment, the trial court said,

> [T]his case basically comes down to the offense itself, Mr. Barnes, and your prior -- prior record. I do agree with [your counsel] that rehab would be beneficial for you, that you were probably on drugs when this offense was committed. The problem is I see that you've had other chances before, and other states have given you chances and you still maintain you're on -- probably still on drugs.

These comments indicate that the trial court did, in fact, consider the Tennessee judgments and that they may have affected Barnes' punishment. Because we are not assured that the Tennessee judgments did not influence the trial court, or had but a slight effect, we reverse the trial court's judgment on punishment and remand the cause for a new punishment hearing.

## IV.    Conclusion

We sustain Barnes' complaint that the State failed to sufficiently link him to the Tennessee judgments admitted during punishment. While we affirm the judgment of conviction, we reverse the trial court's judgment as to punishment and remand the cause for a new punishment hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b).

Ralph K. Burgess
Justice

Date Submitted:      September 10, 2019
Date Decided:        September 25, 2019

Publish

12