NUMBER 13-98-623-CR 



COURT OF APPEALS 



THIRTEENTH DISTRICT OF TEXAS 



CORPUS CHRISTI 

___________________________________________________________________ 



ALMA GUADALUPE QUINTANILLA, Appellant, 



v. 



THE STATE OF TEXAS, Appellee. 

___________________________________________________________________ 



On appeal from the 103rd District Court 

of Hidalgo County, Texas. 

___________________________________________________________________ 



O P I N I O N 



Before Chief Justice Seerden and Justices Hinojosa and
Yañez 

Opinion by Chief Justice Seerden 



Alma Guadalupe Quintanilla appeals her conviction of causing serious bodily injury to a
child. See Tex. Penal Code Ann. 22.04 (Vernon Supp. 2000). She pled not guilty,
was tried by a jury and sentenced to ten years in prison. She raises five points of error
challenging the legal and factual sufficiency of the evidence and complaining that the
prosecutor commented on her failure to testify and that the trial court should have
suppressed a videotape that was played for the jury. We affirm. 

Quintanilla was indicted for recklessly causing serious bodily injury to Margaret
("Maggie") Dittman by either striking her head with an unknown object, causing
her head to strike an unknown object, or by shaking her. 

Appellant complains in her second and third points of error that there was neither
legally nor factually sufficient evidence to show that she was the criminal agent who had
caused the injuries to the child. 

In reviewing a legal sufficiency challenge, we view the evidence in the light most
favorable to the prosecution, and ask whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Clewis v. State,
922 S.W.2d 126, 128 (Tex. Crim. App.1996). However, when we consider a claim of factual
insufficiency, we view all the evidence without the prism of "in the light most
favorable to the prosecution" and set aside the verdict only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d at
129; Haskins v. State, 960 S.W.2d 207, 208 (Tex. App.--Corpus Christi 1997, no
pet.). 

In the present case, Katherine Dittman, the mother of Maggie, testified that she had
lunch with Quintanilla and her daughter Maggie, and then returned to her job as a
veterinarian, leaving Quintanilla and Maggie alone at the house. 

Some thirty minutes after Katherine returned to her job, Quintanilla telephoned her and
told her that Maggie had fainted and that she was not sure if Maggie was breathing.
Katherine told Quintanilla to call 911 and she rushed home herself to find Maggie in an
unconscious state. Quintanilla explained to Katherine that Maggie was playing alone in her
room, and that, when Quintanilla checked on her, she found Maggie slumped in her chair.
Other evidence shows that appellant told the 911 operator and a TV reporter that appellant
and Maggie were alone at the house when Maggie became unconscious. 

The testimony of several witnesses shows that Quintanilla made inconsistent statements
concerning whether Maggie had fallen prior to becoming unconscious. Paramedic Alan Bowers
testified that he asked Quintanilla if Maggie had fallen, and she replied that Maggie had
not fallen or hurt herself. Katherine confirmed that she heard Quintanilla tell EMS
personnel that Maggie had not fallen. However, paramedic Robert Cruz testified that
Quintanilla told him Maggie did fall from the chair in her room. In addition, Quintanilla
told a television reporter at the time she was arrested that Maggie fell from her
highchair on the day of the accident and that Quintanilla attributed Maggie's injuries to
an accumulation of past falls. 

Richard Hawkins, an investigator for Child Protective Services, testified that
Quintanilla had later given a statement to him indicating that she had been giving Maggie
a ride in a red wagon for some ten minutes after Katherine returned to work, and that
Maggie had gone to the bathroom when they returned to the house. Quintanilla stated that
she had just helped Maggie go to the bathroom and that Maggie then walked into her bedroom
while Quintanilla stayed to clean the bathroom. Quintanilla then checked on Maggie and
found her in a chair in her room, then returned to the bathroom to continue cleaning.
Quintanilla stated that when she did not hear anything, she decided to check on Maggie
again to see if she was asleep. When Quintanilla then checked on Maggie, she found her
apparently asleep in the chair and proceeded to pick her up to put Maggie in her crib.
Quintanilla then noticed that Maggie was limp and would not respond. 

Dr. Ronald Dominguez, Maggie's pediatrician, testified that he is board certified in
pediatrics and has been a pediatrician for eight years, and that Maggie had been his
patient since her birth, had been in excellent health, and had no serious injuries in the
past. He examined Maggie after she was admitted to the hospital and found that she had
swelling around the nerves in her brain, retinal hemorrhages, or bleeding on the inside of
her eyes, and bruises on her forehead and neck. Dr. Dominguez testified that these
injuries were caused by severe shaking of the child and possibly banging her head against
a blunt object which would have immediately caused her to lose consciousness. He testified
that the injuries were inconsistent with a fall from a high chair and that he had tested
Maggie's blood to eliminate any other bleeding disorder or illness that might have caused
her injuries. 

Dr. Lawrence Dahm, the pathologist who performed an autopsy on Maggie's body, testified
that he has been a board certified pathologist for over eighteen years, has performed
thousands of autopsies, and has testified many times as an expert witness on forensic
pathology, which specializes in finding out how and why people have died. Dr. Dahm
testified that he found a large visible bruise on Maggie's left forehead and a total of
some seven to eight bruises in the soft tissue between the skin and bone underneath the
scalp. Dr. Dahm also found injuries to the brain and general swelling, as well as retinal
hemorrhages in her eyes. Based on the nature of these injuries, Dr. Dahm ruled out any
pre-existent natural diseases and concluded that Maggie was beaten to death with multiple
blows to the head of tremendous force which all occurred at the same time. Dr. Dahm
further testified that Maggie would have become immediately unconscious after receiving
the injuries and would not have been able to walk, talk or eat, or to recover
consciousness later. He stated that these injuries were not consistent with even a series
of accidental falls, but that severe force had to have been used to produce the injuries
that he found on Maggie. Though he was not certain of the exact method by which the blows
were inflicted, Dr. Dahm did testify that they could have been caused by an adult of
normal strength hitting the child as hard as they could. 

Dr. Michael Burke testified that he is a board certified pediatric neurosurgeon who has
regularly treated children with brain injuries for more than eleven years and acts as a
consultant to the Child Death Review Board when a child dies from a brain injury. Dr.
Burke testified that he examined photographs of Maggie's eyes and that her retinal
hemorrhages were severe, massive and could only have been caused by child abuse, and that
Maggie had been both shaken and hit. Burke concluded that Maggie's injuries were not
consistent with any subsequent lucid interval, but that she would have lost consciousness
immediately after sustaining the injuries and would never have regained consciousness. 

When reviewing a case comprised wholly of circumstantial evidence, the standard of
review is the same as it is for reviewing cases in which direct evidence exists. Kutzner
v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); Earhart v. State, 823
S.W.2d 607, 616 (Tex. Crim. App. 1991). Circumstantial evidence, by itself, may be enough
to support the jury's verdict. Kutzner, 994 S.W.2d at 184. 

Quintanilla points to well established authority that the mere presence of an accused
at the scene of an offense is not alone sufficient to support a conviction. Beardsley
v. State, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987); King v. State, 638
S.W.2d 903, 904 (Tex. Crim. App. 1982); Wright v. State, 603 S.W.2d 838, 840-41
(Tex. Crim. App. 1979) (opinion on rehearing); Johnson v. State, 537 S.W.2d 16,
18 (Tex. Crim. App. 1976); Rocha v. State, 787 S.W.2d 136, 138 (Tex. App.--Corpus
Christi 1990, no pet.). However, presence at the scene is a circumstance which, combined
with other incriminating facts, may be sufficient to prove guilt. Beardsley, 738
S.W.2d at 685; Wright, 603 S.W.2d at 841; Johnson, 537 S.W.2d at 18; Rocha,
787 S.W.2d at 138. 

Specifically, evidence showing that the defendant was the only person present at the
time a child was killed, and that the victim's injuries could only have resulted from
intentional force or blows, is sufficient to support a conviction for murder or injury to
the child. See Childs v. State, 837 S.W.2d 822, 823-34 (Tex. App.--San Antonio
1992, pet. ref'd); Sandow v. State, 787 S.W.2d 588, 598-99 (Tex. App.--Austin
1990, pet. ref'd); Saunders v. State, 780 S.W.2d 471, 474 (Tex. App.--Corpus
Christi 1989), reversed on other grounds, 840 S.W.2d 390 (Tex. Crim. App. 1992).
There is evidence that appellant was alone in the house with Maggie at the time the child
lost consciousness, and her statements suggest that she heard no noise coming from
Maggie's room at or before the time she discovered her slumped in the chair. Yet, the
medical evidence shows that Maggie died from repeated blows to the head that would have
rendered her immediately unconscious and that were inconsistent with injury from a fall or
an accumulation of prior injuries. 

In addition, evidence of subterfuge, by its inherent connection to motive and sense of
guilt, may provide affirmative evidence of culpability on the part of the one to whom such
subterfuge is attributable. Huffman v. State, 775 S.W.2d 653, 660 (Tex. App.--El
Paso 1989, writ ref'd). Accordingly, flight, rebutted alibis, destruction of evidence and
fabrication of evidence are but a few samples of incriminating behavior. Id.; see
also Willis v. State, 785 S.W.2d 378, 382 (Tex. Crim. App. 1989)
(implausible statements by the accused may be considered in sufficiency analysis); Johnson
v. State, 583 S.W.2d 399, 409 (Tex. Crim. App. 1979) (attempts by the defendant to
suppress or fabricate evidence are admissible against him); Loserth v. State, 985
S.W.2d 536 (Tex. App.--San Antonio 1998, pet. ref'd) (lying to police concerning
whereabouts on night of murder may be considered as evidence of guilt). 

In the present case, Quintanilla's statements are inconsistent as to whether Maggie
fell or injured herself on the day in question. The jury was entitled to consider this as
evidence that Quintanilla fabricated the fall as an excuse for Maggie's injuries in an
attempt to cover up her own guilt. We conclude that the evidence was legally sufficient to
support the conviction. We overrule Quintanilla's second point of error. 

With regard to factual sufficiency, Quintanilla offered no medical evidence to dispute
the testimony of the doctors, but relies upon the testimony of friends and family members
who stated that she was a trustworthy person who would not have injured Maggie.
Considering all the evidence without the prism of "in the light most favorable to the
prosecution," we conclude that it was factually sufficient to show that Quintanilla
injured Maggie and to support her conviction. We overrule Quintanilla's third point of
error. 

By her first point of error, Quintanilla complains that the prosecutor made improper
comments during closing argument by pointing out her failure to testify and her failure to
give a statement to the police after arrest. 

Comment upon a defendant's failure to testify violates the Fifth Amendment of the
United States Constitution and article I, section 10 of the Texas Constitution. Moore
v. State, 849 S.W.2d 350, 351 (Tex. Crim. App. 1993); Rosillo v. State, 953
S.W.2d 808, 817-18 (Tex. App.--Corpus Christi 1997, pet. ref'd). It is also a violation of
those same provisions of the federal and state constitutions for the State to comment on
the defendant's post-arrest silence. Doyle v. Ohio, 96 S.Ct. 2240, 2245 (1976); Dinkins
v. State, 894 S.W.2d 330, 356 (Tex. Crim. App.1995); Lewis v. State, 933
S.W.2d 172, 182 (Tex. App.--Corpus Christi 1996, pet. ref'd). A comment on post-arrest
silence is akin to a comment on failure to testify at trial because it attempts to raise
an inference of guilt arising from the defendant's invocation of a constitutional right. Dinkins,
894 S.W.2d at 356; Nixon v. State, 940 S.W.2d 687, 692 (Tex. App.--El Paso 1996,
pet. ref'd). 

Quintanilla points to four separate instances in closing argument when the prosecutor
allegedly made improper comments. 

First, the prosecutor stated as follows in his final argument to the jury at the
guilt/innocence phase of trial, without any objection from the defendant: 

We know this child suffered serious brain injuries. But quite frankly, the only
person who knows how these injuries occurred is Alma Quintanilla. 



This is not a situation where we have a knife wound. This is not a situation where we
have a gunshot wound. And this is what the law allows us to plead. It is only Alma
Quintanilla who knows how. 



You also don't see anything in this charge about us having to prove motive. We do not
have to show you what motivation the defendant had for doing what she did. Only Alma
Quintanilla knows why Maggie Dittman is not alive, and it's an impossibility for us
to prove to you why that occurred, just that it did. 



The above statements were clearly improper comments and should not have been made. 

An argument is an improper comment on the defendant's failure to testify, if the
language, when viewed from the jury's standpoint, is of such a character that the jury
would necessarily and naturally take it as a comment on the accused's failure to testify. Madden
v. State, 799 S.W.2d 683, 700 (Tex. Crim. App. 1990); Rosillo, 953 S.W.2d at
817-18. If the remark called the jury's attention to the absence of evidence that only the
testimony from the appellant could supply, the conviction is subject to being reversed. Madden,
799 S.W.2d at 700; Rosillo, 953 S.W.2d at 817-18. 

Similar comments that the defendant was "[t]he only person that knows the motive
or what he was really doing with this gun," have been held to be an improper comment
on the defendant's failure to testify. Lee v. State, 628 S.W.2d 70, 71 (Tex.
Crim. App. 1982); see also Madden, 799 S.W.2d at 699 (argument that
there is only one person who knows why defendant acted in the manner that he did). 

However, a defendant's failure to object to an improper jury argument or to pursue that
objection to an adverse ruling waives the right to complain about the argument on appeal.
Tex. R. App. P. 33.1(a); Valencia v. State, 946 S.W.2d 81, 82-83 (Tex. Crim. App.
1997); Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), cert.
denied, 117 S.Ct. 1442 (1997); Sanders v. State, 963 S.W.2d 184, 190 (Tex.
App.--Corpus Christi 1998, pet. ref'd).(1) Consequently,
the trial judge was not called upon to take any action to protect appellant's rights in
this instance. Because Quintanilla failed to object to these comments at trial, she may
not complain on appeal. 

However, Quintanilla did object to other comments made by the State during its argument
on rebuttal at the guilt/innocence phase of trial. Specifically, the 

prosecutor stated: 

There is only one person who could have done this. And there is only one person who has
told a lie. And there is only one person who has refused to give a sworn statement to
the police, and that is the defendant. 



Mr. Saenz: Your Honor, I'm going to object to his remarks that the defendant refused to
give a statement. She has got a right not to give a statement and that cannot be
considered by the jury. 



The Court: The jury will disregard the last statement. 



Mr. Hagen: I am referring to the statement of the police, Your Honor, to the statement
to the police. There has been ample evidence, it's in evidence that she did not give a
sworn statement to the police when she went up there with her brother on the 16th. 



The Court: She is not required to. 

Mr. Saenz: That's exactly my point, Your Honor, we ask the Court to instruct the jury. 



The Court: I think I have. 



Mr. Saenz: Ask for a mistrial. 



The Court: Denied. 



Alma's Quintanilla's brother, Romel Quintanilla, testified that he went to the police
station with her on January 16th, when she was suspected of the crime but before she was
arrested. Romel indicated that Alma Quintanilla was taken to another room for questioning.
Romel made no mention of Alma Quintanilla either giving, or refusing to give, a statement
to the police. Harlingen police investigator Carlos Vela testified without objection that
the police department had asked Alma Quintanilla to come in voluntarily and give a sworn
statement, but she had refused to give such a statement. 

While the State contended that comment about refusing to give a statement was
permissible because it referred to pre-arrest silence which may be permissible, as
mentioned in Waldo v. State, 746 S.W.2d 750 (Tex. Crim. App. 1988), the objected
to comment was not limited to the pre-arrest time period. In addition, the testimony of
the officer was not that appellant refused to "give a statement" or was silent
with the police, but that she refused to give a "sworn statement." In any event,
the objection by appellant was sustained by the trial judge and the jury instructed to
disregard the statement. 

Next, Quintanilla complains of the following comments also made by the prosecutor on
rebuttal at the guilt/innocence phase of the trial: 

And her little dress is stained with blood. Her little dress is stained with blood. Are
there any explanations for this dress being soiled with blood, or the drops of blood on
the steps that Mark Dittman saw when he came home? 



Mr. Saenz: Your Honor, I'm going to object, let the record reflect when the prosecutor
made the remark, that he clearly looked over here at the defendant, I believe that is a
comment on her failure to testify, Your Honor. 



The Court: I am sure the jury understood my [earlier] instruction not to consider the
defendant's failure to testify. 



The prosecutor then continued his argument to the jury without any additional comment
by the trial court concerning its ruling on the objection, and without further objection
by the defendant. 

A defendant must object to an allegedly improper jury argument and pursue the objection
to an adverse ruling in order to preserve his right to complain about the argument on
appeal. Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); Limas v.
State, 941 S.W.2d 198, 203 (Tex. App.--Corpus Christi 1996, pet. ref'd). Moreover, a
nonspecific comment by the court does not equate to a ruling on the objection. Mayberry
v. State, 532 S.W.2d 80, 84 (Tex. Crim. App. 1975) (the court stated merely
"jury will recall the evidence," in response to an objection that there was no
evidence to support the prosecutor's argument); Edwards v. State, 813 S.W.2d 572,
576 (Tex. App.--Dallas 1991, pet. ref'd); see also Cook v. State, 741
S.W.2d 928, 939 (Tex. Crim. App. 1987) ("Counsel, stay within the record,
please," in response to an objection that the prosecutor was testifying); Lewis
v. State, 664 S.W.2d 345, 349 (Tex. Crim. App. 1984) ("It is up to the jury to
determine," in response to an objection that counsel had gone outside the record); DeRusse
v. State, 579 S.W.2d 224, 235 (Tex. Crim. App. 1979) ("The jury will remember
the testimony that has been elicited from [the witness]," in response to an objection
that counsel had gone outside the record). 

In the present case, the trial court's statement that "I am sure the jury
understood my [earlier] instruction not to consider the defendant's failure to
testify" did not amount to a ruling on Quintanilla's objection and preserved nothing
for review. 

Finally, at the punishment phase of trial, the prosecutor stated, without objection, in
rebuttal to the defendant's request for probation: 

A good candidate for rehabilitation. Has anybody heard anybody admit to a problem?
Has anybody heard a single witness admit that the woman even raised a hand to that child?
Isn't the first step to rehabilitation admitting that there is a problem? Is there any
family member that even bats an eye about letting this woman alone with their children? 



While these comments are improper, see Swallow v. State, 829 S.W.2d
223, 225-26 (Tex. Crim. App. 1992); Caldwell v. State, 818 S.W.2d 790, 800 (Tex.
Crim. App. 1991); Dickinson v. State, 685 S.W.2d 320, 324-25 (Tex. Crim. App.
1984) (comments at the punishment phase concerning the defendant's lack of contrition or
remorse improperly direct attention to her failure to testify about her mental state),
because Quintanilla failed to object at trial, she may not complain on appeal. See
Tex. R. App. P. 33.1(a); Valencia, 946 S.W.2d at 82-83; Cockrell, 933
S.W.2d at 89; Sanders, 963 S.W.2d at 190. We overrule Quintanilla's first point
of error.(2) 

By her fourth and fifth points of error, Quintanilla complains that the trial court
should have suppressed the videotape taken of her by a local TV station reporter. 

Jeanie Rohr testified that she was a television reporter for KGBT assigned to the
present case, which she had covered since the time of Maggie's death. Rohr stated that she
inquired several times of the local police department whether an arrest of a suspect had
been made, and that Harlingen Police Chief Jim Schoepner called to tell her when
Quintanilla was arrested. Rohr then went to the police department booking area and
interviewed Quintanilla along with other reporters. Rohr asked her whether she was
babysitting that day and captured Quintanilla's response to that and other questions by
the reporters on videotape. In particular, Quintanilla stated on the videotape that Maggie
had fallen a lot and was accident prone, but repeatedly denied lifting a hand against her.
Quintanilla also stated on the videotape that Maggie had fallen from her chair on the day
she lost consciousness. 

At trial, Rohr testified that she had reviewed the videotape and that the video and
audio portions were both accurate. The State then introduced the videotape into evidence,
over Quintanilla's objections. 

Specifically, Quintanilla complains by her fourth point of error that Rohr was acting
as an agent for the police department at the time she questioned her and that the
videotaped answers by Quintanilla were taken in violation of the safeguards provided by
Texas Code of Criminal Procedure for statements taken during custodial interrogation. 

The Code provides that electronically recorded oral statements of the accused made as a
result of custodial interrogation are inadmissible unless she knowingly, intelligently and
voluntarily waived her rights after being warned in conformity with the statute. See
Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 1999). 

Although normally "custodial interrogation" applies only to questioning by
law enforcement personnel, where an individual acts as an agent for law enforcement
personnel, the confession rules likewise apply. See Alvarado v. State, 853 S.W.2d
17, 22 (Tex. Crim. App. 1993). In deciding whether a non-law enforcement questioner is
acting as an agent of law enforcement, the record as a whole must clearly establish that
the defendant's statements resulted from a calculated practice which all agents of the
State involved knew was reasonably likely to evoke an incriminating response and that the
police were utilizing an agent so as to accomplish what the police could not have lawfully
accomplished themselves. Cates v. State, 776 S.W.2d 170, 171-72 (Tex. Crim. App.
1989) (citing McCrory v. State, 643 S.W.2d 725, 743 (Tex. Crim. App. 1982)); Edwards
v. State, 956 S.W.2d 687, 690 (Tex. App.--Texarkana 1997, no pet.); Henson v.
State, 794 S.W.2d 385, 390 (Tex. App.--Dallas 1990, pet. ref'd). 

In the present case, although Rohr was informed by the police that Quintanilla had been
arrested, there was no indication that Rohr or the other reporters present at the time
were acting at the request of the State in conducting an interview in the booking room,
that they were in any way being controlled by the police or directed to do that which the
police could not do on their own. Accordingly, Rohr was not an agent of the State and the
rules regarding custodial interrogation did not apply to the videotaped interview. See
State v. Hernandez, 842 S.W.2d 306, 315-16 (Tex. App.--San Antonio 1992, pet. ref'd)
(television news reporter who had no arrangement with the State and was at no time subject
to the control of the State was clearly acting on his own in eliciting statements from the
defendant and was not a State agent). We overrule Quintanilla's fourth point of error. 

Quintanilla complains by her fifth point of error that the videotape was inadmissible
because the State failed to identify all of the voices of the reporters asking questions
of Quintanilla. 

Texas Rule of Evidence 901 requires authentication of an exhibit by "evidence
sufficient to support a finding that the matter in question is what its proponent
claims." Specifically, Rule 901(b)(5) provides for "[i]dentification of a voice,
whether heard firsthand or through mechanical or electronic transmission or recording, by
opinion based upon hearing the voice at anytime under circumstances connecting it with the
alleged speaker." 

In the present case, Quintanilla's voice is clearly identified and not disputed.
However, there was more than one reporter questioning her, and none of the reporters are
visible in the videotape. Accordingly, Quintanilla complains that, because not all of the
voices on the tape have been identified, it was not properly authenticated and should have
been suppressed. 

However, the presence on the tape of other individuals who are not pertinent to the
case and who are not identified, does not affect the admissibility of the tape. See
Leos v. State, 847 S.W.2d 665, 667 (Tex. App.--Texarkana 1993), reversed on other
grounds, 883 S.W.2d 209 (Tex. Crim. App. 1994) (quoting United States v. Vega,
860 F.2d 779 (7th Cir.1988) (construction of identical language in federal rules of
evidence)). 

The identity of the reporters asking questions of Quintanilla was not pertinent to the
present case. Quintanilla's answers are the only portion of the tape that is material to
her prosecution for the charged offense. Thus, the failure to identify every reporter
asking questions did not affect the authentication of Quintanilla's answers or the
admissibility of the videotape. We overrule Quintanilla's fifth point of error. 

The judgment of the trial court is AFFIRMED. 





__________________________________ 

ROBERT J. SEERDEN, Chief Justice 

Do not publish. 

Tex. R. App. P. 47.3. 



Opinion delivered and filed 

this 23rd day of March, 2000. 

1. Cockrell and its progeny overruled earlier cases
suggesting that no objection was necessary to preserve complaints concerning erroneous
jury argument that could not have been cured by an instruction to disregard. See
Montoya v. State, 744 S.W.2d 15, 37 (Tex. Crim. App. 1987), cert. denied,
108 S.Ct. 2887 (1988); Romo v. State, 631 S.W.2d 504, 505 (Tex. Crim. App. 1982).


2. While we do not find that any of the complained-of statements
amounted to reversible error due to failure to preserve error by the defendant, we do note
that the prosecutor in this case exceeded the bounds of proper jury argument on several
occasions, and we disapprove of his attempts to bring improper influences to bear on the
jury's deliberations. Such attempts by the State to gain a conviction, even when that
conviction is sustained on appeal, should not be encouraged by the courts or by the
district attorney's offices representing the State before them.