NUMBER 13-00-519-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


___________________________________________________________________

 

JESUS PEREZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

___________________________________________________________________


On appeal from the 93rd District Court


of Hidalgo County, Texas.


__________________________________________________________________


O P I N I O N



Before Chief Justice Valdez and Justices Yañez and Rodriguez


Opinion by Justice Rodriguez



 Appellant, Jesus Perez, appeals his jury convictions for theft by a public servant
and money laundering. See Tex. Pen. Code Ann. §§ 31.03(a), (b)(1) & 34.02(a)(1)
(Vernon 2003). The jury assessed punishment in the theft case at two years'
imprisonment and in the money laundering case at five years' confinement, both terms
to be suspended with community supervision for five years and a $10,000.00 fine. 
By five issues, appellant contends: (1) the evidence is legally and factually insufficient
to support his convictions; (2) his due process rights were violated; (3) the trial court
abused its discretion by ordering restitution when there was no victim; (4) the
judgment violates the double jeopardy clause of the United States Constitution; and
(5) his trial counsel provided ineffective assistance. We affirm.

I. Background

 From 1981 through 1999, appellant was employed by the La Joya Police
Department (LJPD). In 1985, he was appointed chief of police. As police chief,
appellant worked with the reserve officers' account (reserve account) using the funds
to equip, uniform, and train the police department's reserve officers. In 1988,
appellant became the sole signatory on the reserve account, and began managing it. 
In 1997 and 1998, a number of cash deposits were made into the reserve account. 
These monies form the basis of the criminal charges filed against appellant.

II. Sufficiency of the Evidence

 By his third issue, appellant contends the evidence is legally and factually
insufficient to convict him of either theft by a public servant or money laundering. 
Appellant contends the evidence is insufficient to establish: (1) unlawful appropriation
of the money; (2) intent to deprive the claimants of the money; and (3) ownership of
the money.A. Standard of Review

 When we review a legal sufficiency of the evidence point of error, we view all
the evidence in the light most favorable to the prosecution to determine whether any
rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Rosillo v. State,
953 S.W.2d 808, 811 (Tex. App.-Corpus Christi 1997, pet. ref'd). We measure the
legal sufficiency of the evidence by the elements of the offense as defined by the
hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997). Such a charge would accurately set out the law, would be authorized by
the indictment, and would not unnecessarily increase the State's burden of proof. Id.

 Under the factual sufficiency standard of review, we ask "whether a neutral
review of all the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof." Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). We will reverse the fact finder's determination only if "a manifest injustice has
occurred." Id. at 12. In conducting this analysis, we may disagree with the jury's
determination, even if probative evidence supports the verdict, but we must avoid
substituting our judgment for that of the fact finder. Id.

 The jury, as the trier of fact, may use common sense and apply common
knowledge, observation, and experience gained in ordinary affairs when giving effect
to the inferences that may be reasonably drawn from the evidence. Booker v. State,
929 S.W.2d 57, 60 (Tex. App.-Beaumont 1996, pet. ref'd). As fact finder, the jury
is the exclusive judge of the credibility of witnesses and the weight to be afforded their
testimony. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). The
jury is free to accept one version of the facts, reject another, or reject all or any of a
witness's testimony. Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App.
1981); Sills v. State, 846 S.W.2d 392, 394 (Tex. App.-Houston [14th Dist.] 1992,
pet. ref'd). Simply because the defendant presents a different version of the facts
does not render the State's evidence insufficient. Anderson v. State, 701 S.W.2d
868, 872 (Tex. Crim. App. 1985); Sills, 846 S.W.2d at 394.

B. Theft by a Public Servant

 Appellant was indicted for theft of money in the aggregate amount of
"$20,000.00 and more, but less than $100,000.00," without the effective consent
of Guadalupe Gomez, Rolando Gallegos, Joel Lozano, Jose Alberto Mendoza, and
Jesus Flores, with the intent to deprive them of their property. (1) The parties agreed to
provide alternate instructions to the jury for thefts of lesser amounts, including
$1,500.00 or more but less than $20,000.00, and $500.00 or more but less than
$1,500.00. The jury found appellant guilty of the offense of theft of property by a
public servant of the value of $1,500.00 or more but less than $20,000.00.

 A person commits the offense of theft if he unlawfully appropriates property
with intent to deprive the owner of the property. Tex. Pen. Code Ann. § 31.03(a)
(Vernon 2003). To "appropriate" means to acquire or otherwise exercise control over
property other than real property. Id. § 31.01(4)(B). Appropriation of property is
unlawful if it is without the owner's effective consent. Id. § 31.03(b)(1). Consent is
not effective if induced by deception or coercion. Id. § 31.01(3)(A). "Deception"
means "creating or confirming by words or conduct a false impression of law or fact
that is likely to affect the judgment of another in the transaction, and that the actor
does not believe to be true." Id. § 31.01(1)(A). "Deprive" means "to withhold
property from the owner permanently or for so extended a period of time that a major
portion of the value of enjoyment of the property is lost to the owner," or "to dispose
of property in a manner that makes recovery of the property by the owner unlikely." 
Id. § 31.01(2)(A) & (C).

 Both lack of consent and intent to deprive may be shown by circumstantial
evidence. See Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981) (holding
intent to deprive may be determined from acts and words of accused); Williams v.
State, 591 S.W.2d 873, 875 (Tex. Crim. App. 1979) (holding lack of consent may be
proved by circumstantial evidence). Furthermore, thefts may be aggregated when the
amounts were obtained pursuant to one scheme or continuing course of conduct, and
the conduct can be considered as one offense. Tex. Pen. Code Ann. § 31.09 (Vernon
2003).

1. Guadalupe Gomez

 Guadalupe Gomez testified she located her vehicle at the La Joya Police Station
when she went to the station to report it stolen. While at the station, Gomez learned
her granddaughters, who had been occupants in the car, had been arrested for evading
arrest. Officer Jose Luis Del Angel, an investigator with the LJPD, testified cash in the
amount of $2,900.00, all hundreds, had been found in Gomez's vehicle. Gomez
explained the money was from the sale of furniture at her Houston store, and was
being used to purchase the vehicle.

 Del Angel testified he could have seized the money or forfeited it based on the
alert of a drug dog. The money could have been drug proceeds. Del Angel informed
appellant that money had been found in Gomez's car. Appellant knew that the dog
had alerted and that the money might be dirty. Del Angel heard appellant talk with
Gomez about the money. Appellant explained to Gomez that a drug dog had alerted
to the money and that she could donate the money to the reserve fund in order to
avoid legal problems and costs in attempting to get the money back through a civil
forfeiture proceeding. Gomez left the police station undecided as to whether she
would donate the money. She called later that day saying she would donate the
money and sign an affidavit. Del Angel testified he prepared Gomez's affidavit which
included blanks that were filled in with her identifying information and the following
paragraph, "I, Guadalupe Lopez Gomez wish to donate $2900.00 dollars to [the] La
Joya Police Department reserve fund for ceaseless police training. I make this
donation with the understanding that the $2900.00 dollars will be used strictly for
police use only."

 Gomez testified that the following day she went back to the police station and
was asked to sign a document donating money to police officers in La Joya. Gomez
testified she was nervous and did not want to donate the money. She did not live in
La Joya and did not know anyone in the police department. Nonetheless, Gomez
donated the money because she was told it was the best thing to do, and she thought
that if she did not donate the money, she would have to go to court and would
probably not get the money back anyway. If she had known then what she knew at
the time of trial, Gomez would have claimed the money. She would have fought for
it.

 Appellant testified he met Gomez the day she reported the vehicle stolen. 
Appellant said $30.00 was found in a purse during the initial search of the car. 
However, a large amount of money was discovered on one of the females when she
was booked. Gomez told him the girl had gotten the money out of her purse. 
Appellant said that because drugs were suspected, a K-9 unit had been brought in. 
The dog alerted to the vehicle, indicating there may have been drugs in the vehicle. 
He spoke with Gomez and told her the dog had alerted. He also told her Del Angel
was in charge of the case and that it was appellant's understanding that they would
possibly charge the females and the driver with some sort of crime. Appellant was
aware Gomez's money was eventually donated to the reserve fund.

2. Rolando Gallegos

 Rolando Gallegos testified the police stopped the vehicle in which he was riding,
and found cocaine when they searched the car. He was taken into custody and
booked. When Gallegos's property was inventoried, the police found $1,355.00 cash. 
Gallegos told them the money was from the sale of a truck. After he was placed in
a cell, Gallegos was questioned on two occasions about cocaine, and on a third
occasion about the money. The officers suggested that an offer might be made to
him-a chance to get out if he donated the money to the police. Gallegos testified he
did not want to donate the money. He did not live in La Joya. He was feeling sick
and wanted to get out of jail and go home. Appellant talked with Gallegos about the
drugs and the money. Appellant told him to sign the affidavit saying he would donate
the money to be used for police purposes. Appellant told Gallegos that if he donated
the money, he could get out, so he signed over the money. It was like having to pay
a fine to get out. Gallegos said there were no threats. Gallegos was told, however,
that if he did not sign the paper, he would be transferred to the county jail. At the
time of his arrest, Gallegos was on probation for possession of over 100 pounds of
marihuana. His probation was never revoked.

 Arturo Tijerina, who assisted with Gallegos's arrest, testified Gallegos did not
know to whom the money belonged, therefore, it was donated to the LJPD reserve
fund. When Tijerina charged Gallegos with possession of a controlled substance,
Gallegos had approximately $1,300.00 on him. The money was not, however,
reflected on the property report.

 As did Tijerina, appellant testified that Gallegos was not claiming the money. 
Appellant also testified that he and Gallegos met briefly, after appellant was told the
affidavit had been drawn up and Gallegos was going to sign it. Appellant stated he
did not speak with Gallegos regarding the donation.

 Israel Pacheco, a sergeant with the Texas Rangers, testified he had reviewed
Gallegos's police file. On the arrest report, a line was drawn through the type of
offense with the initials "JP" above it. Sgt. Pacheco noticed the original amount of
money found in Gallegos' property had been scratched off, and a different number
written in its place.

3. Joel Lozano

 Joel Lozano testified the LJPD seized his vehicle when a gun and an ounce of
cocaine were found in it. Lozano explained to appellant that he had sold that vehicle
to another, but the new owner no longer wanted it. Appellant told Lozano he could
take the vehicle if he paid $330.00. Appellant told him to ask for Del Angel when he
took the money to the station. Lozano did not intend to make a money donation to
the LJPD reserve police fund; he was just paying a fine for the truck.

 Appellant testified Lozano's storage fees were paid and received on behalf of
the City of La Joya (the City) through the police department, and that the money was
deposited into the reserve officer's account. Appellant claimed the decision to put the
funds in the reserve account was based on information provided by Del Angel who told
him the department, not the City, could charge storage fees. Appellant put the money
into the reserve fund so it would not go into the forfeiture fund which was only for
money seized in connection with drugs.

 Del Angel testified appellant called him and told him Lozano was going to donate
money for the return of his vehicle. Del Angel gave Lozano's money to appellant. No
affidavit was taken. Later appellant was upset when he learned a city receipt had
been given to Lozano, and that the City had reported a $300.00 shortage because the
money had been deposited into the reserve fund, not the city fund.

4. Jose Alberto Mendoza

 Del Angel testified that when he arrested Jose Mendoza for a traffic violation,
he noticed a very, very strong odor from the car. Mendoza told Del Angel he and his
friend had smoked a marihuana joint. Del Angel noticed Mendoza had money in his
pocket. The bills were all hundreds and were wrapped in a wad with a rubber band
around them. This was an indication that the money was probably drug money. 
Mendoza told Del Angel he had won the money on a "tanda" (raffle). Mendoza was
charged with possession of marihuana and public intoxication. Appellant talked with
Del Angel, Mendoza, and Guadalupe Elizondo, Mendoza's employer. Del Angel
testified appellant wrote a portion of the affidavit that stated Mendoza would donate
the money. (2) Del Angel typed it into the body of the affidavit. Appellant wanted Del
Angel to drop both charges, but Del Angel said he would only drop the possession
charge. Mendoza was charged with public intoxication. Later, Del Angel suggested
the matter be handled as a seizure, but appellant said no, that it was a donation. 
Appellant had a receipt showing he had already deposited the money into the reserve
account.

 Mendoza testified he had approximately $5,000.00 in hundreds, twenties, tens,
and fives, money that he had won from friends. Mendoza thought he was under arrest
when he was taken to the police station where the police found the money. Because
appellant was a customer at the restaurant where Mendoza worked, Mendoza asked
for him. Mendoza called his employer, Guadalupe Elizondo. When Mendoza met with
appellant, Del Angel, and Elizondo, appellant told him that if he donated the money
there would not be an investigation, but that if he did not donate the money, they
would investigate and it would get worse for him. Del Angel told Mendoza the money
they found was drug money. Mendoza had a proceeding for possession of cocaine
pending, and was told they were going to send him "up to the county [jail]." Mendoza
gave the money to the police. He was nervous; he had the drug case pending; and he
had been caught with $5,000.00. Mendoza just wanted to get out, and was led to
believe he would get out if he donated the money. Mendoza testified he did not want
to donate the $5,000.00.

 Appellant testified he met with Del Angel, Mendoza and Elizondo. When
Mendoza asked what would happen if he did not donate the money, appellant testified
that he told him they would seize it and send it over to the Drug Enforcement Agency
(DEA) and that a forfeiture case would be filed to take the money from him. After the
explanation was given, Mendoza nodded in agreement and appellant went back into
his office. That is the last appellant knew of the case. He testified that he did not
prepare the affidavit, and it was not signed in his presence. Appellant said he took the
money as a donation.

5. Jesus Flores

 When the vehicle in which Jesus Flores was riding had a flat tire, the police
stopped to help. Noticing a beer can, the officers received permission to check the
vehicle. Another person in the vehicle was arrested for public intoxication. Flores
testified that he was also taken to the station and booked. He was nervous because
he was traveling away from home, in violation of his probation. (3) Money in the amount
of approximately $500.00 was taken from his pocket when he was booked. Flores
signed an affidavit stating he wanted to put the money towards police training. Forty-five minutes later, he was released. Flores testified he was scared. He knew he was
in trouble and was afraid that if he did not cooperate with the police department he
would be charged with possession and would face a probation violation. Signing the
affidavit was his way out without being charged.

 Sgt. Pacheco testified that Flores's file contained an unsigned but notarized
affidavit. It set out that Flores would donate $506.63 to the LJPD to be used strictly
for police training.

6. Other Relevant Testimony Appellant testified he asked Del Angel why the donations were being made, and
Del Angel told him that he had explained the forfeiture process to the individuals. In
lieu of a forfeiture proceeding which would cost them money, the individuals decided
to donate money to the police department. Appellant testified it was up to the seizing
officer to determine whether they were going to file for forfeiture or not; it was not up
to appellant.

 Sgt. Pacheco testified appellant admitted people were donating money under his
watch, at his direction. Appellant took full responsibility for whatever his police
officers were doing. He was aware these monies were being deposited in the reserve
fund, and that he was the only one with access to the account. Appellant further
admitted monies were coming from police officers to him and he was depositing the
money. Appellant told Sgt. Pacheco he knew the proper procedures for seizing and
forfeiting money, but saw this as an easy way to get money in order to buy equipment
for his men. Appellant also told him he would always withdraw cash from the fund
to avoid check writing charges. Sgt. Pacheco found this unusual because anytime you
are dealing in cash you are setting yourself up for a fall. According to Sgt. Pacheco,
there were no matching receipts for over $10,000.00 withdrawn from the account. 
There were also missing criminal case police reports and folders, some of which had
items in them related to the donations.

 Kathryn Crews, a financial analyst with the Federal Bureau of Investigation (FBI),
testified she reviewed documentation provided to her, and found approximately
$3,500.00 for which there were no receipts. This represented a six-month period of
time from January to June 30, 1998.

7. Sufficiency of the Evidence on Theft Conviction

 Viewing this evidence in the light most favorable to the prosecution, a rational
trier of fact could have reasonably inferred, beyond reasonable doubt, that appellant
appropriated the money from each owner without effective consent and with the
intent to deprive the owner of his or her money. See Jackson, 443 U.S. at 318-19;
Rosillo, 953 S.W.2d at 811; see also Tex. Pen. Code Ann. §§ 31.01, 31.03 (Vernon
2003). Further, after a neutral review of all the evidence, the proof of guilt is not so
obviously weak as to undermine confidence in the jury's determination, or the proof
of guilt, although adequate if taken alone, is not greatly outweighed by contrary proof. 
See Johnson, 23 S.W.3d at 11. Thus, the finding is not manifestly unjust or clearly
wrong when tested against the entire record. Id. Accordingly, the evidence is neither
legally nor factually insufficient to support the verdict.

 Because we have concluded the evidence is sufficient to support the jury's
finding of theft by a public servant of the value of $1,500.00 or more but less than
$20,000.00, without the effective consent of Gomez, Gallegos, Lozano, Mendoza, and 
Flores, and because appellant did not object to the submission of the alternative
manner and means of the commission of this offense, we need not address his
sufficiency challenge to the alleged unlawful appropriation of money from Oscar
Cuellar, in his capacity as city manager of the City. (4) See Lawton v. State, 913
S.W.2d 542, 551 (Tex. Crim. App. 1995) (State allowed to plead alternative theories
of manner and means in conjunctive and proof under one theory will suffice for
conviction); Scott v. State, 732 S.W.2d 354, 360 (Tex. Crim. App. 1987) (where
indictment alleged alternative theories, manner and means unknown and a named
manner and means, proof of either means was sufficient). 

C. Money Laundering

 Appellant was also indicted for money laundering when he,


 did then and there knowingly acquire, receive, and possess the proceeds
of criminal activity, to-wit: money in the value of $3,000 or more but
less than $20,000 to-wit: by telling a prisoner who had been arrested by
the La Joya Police Department that he would be taken to the Hidalgo
County Jail and that federal law enforcement would investigate him if he
did not give the said proceeds to the La Joya Police Department.


The jury found appellant guilty of the offense of money laundering as charged in the
indictment. 

 A person commits the offense of money laundering when he knowingly obtains
or maintains an interest in, receives, conceals, possesses, transfers, or transports the
proceeds of criminal activity. Tex. Pen. Code Ann. § 34.02(a)(1) (Vernon 2003). 
Section 34.02(a) requires the defendant knowingly do something involving the
proceeds of criminal activity. Id.

 A person acts knowingly, or with knowledge, with respect to the nature
of his conduct or to circumstances surrounding his conduct when he is
aware of the nature of his conduct or that the circumstances exist. A
person acts knowingly, or with knowledge, with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause
the result.


Id. § 6.03(b). "Criminal activity" is any felony offense. Id. § 34.01(1)(A). 
"'Proceeds' means funds acquired or derived directly or indirectly from, produced
through, or realized through an act." Id. § 34.01(3).

 Appellant contends the State failed to present evidence of "possession by
[appellant] knowing that [the] monies were 'proceeds' of a 'criminal activity.'" He
asserts his money laundering conviction must be reversed because the evidence is
legally and factually insufficient to establish: (1) he knew that Mendoza's money was
the proceeds of criminal activity, which he contends could be the only basis of the
money laundering offense; and (2) he told Mendoza he would be taken to jail if he did
not give the money to the police department, which appellant contends is the alleged
manner and means of committing the offense. We construe appellant's argument to
be that the evidence did not prove that appellant knowingly acquired, received, or
possessed proceeds of criminal activity from Mendoza. See id. § 34.02(a)(1).

 We have carefully reviewed the record evidence set out above regarding
Mendoza's alleged donation. Taken in the light most favorable to the prosecution, we
conclude a rational trier of fact could have reasonably inferred, beyond reasonable
doubt, that appellant committed the money laundering offense. See Jackson, 443
U.S. at 318-19; Rosillo, 953 S.W.2d at 811; see also Tex. Pen. Code Ann.
§34.02(a)(1) (Vernon 2003). Further, after a neutral review of all the evidence, the
proof of guilt is not so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is not greatly
outweighed by contrary proof. See Johnson, 23 S.W.3d at 11. Because Del Angel,
Mendoza, and appellant told different stories, it was within the province of the jury to
judge the credibility of the witnesses and determine the weight to be given their
testimony. See Penagraph, 623 S.W.2d at 343 (jury free to accept one version of
facts, reject another, or reject all or any of witness's testimony); Sills, 846 S.W.2d at
394 (same). Thus, the finding is not manifestly unjust or clearly wrong when tested
against the entire record. Id. Accordingly, the evidence is neither legally nor factually
insufficient to support the verdict on the money laundering charge. 

 We overrule appellant's third issue.

III. Due Process

 By his first issue, appellant contends his due process rights were violated by his
convictions and incarceration for charged conduct that Texas's criminal statutes, as
properly interpreted, do not prohibit. Appellant's entire argument is that:

 a careful record review shows the evidence undisputedly established a
defense under Tex. Pen. Code § 34.02(c) to count two's money
laundering charge: namely, peace officers [appellant] (and Del Angel)
"acted with intent to facilitate the lawful seizure, . . . , disposition of
funds or other legitimate law enforcement purpose pursuant to the law
of this state or the United States." Texas law permits anyone to give
money to another. If one donates less than $10,000 to another no tax
is assessed under the U.S. Internal Revenue Code. Due process is
violated by [appellant's] conviction for conduct that Texas' criminal
statutes do not prohibit. Fiore v. White, 121 S.Ct. 712, 714 (2001).


 Appellant urges that the evidence establishes a statutory defense. Appellant
does not develop his argument further. He does not provide specific citations to
relevant portions of the record and to authority that support his contention. See Tex.
R. App. P. 38.1(h) (brief must contain clear and concise arguments for contentions
made, with appropriate citations to authorities and to record). Neither does he offer
a clear and concise argument for the contentions he makes. See id. In accordance
with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will only consider
contentions that are supported by clear and concise arguments with appropriate
citations to authorities and to the record. See id. We will not make appellant's
arguments for him and, thus, we hold this issue to be inadequately briefed. See Tong
v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000); Wyatt v. State, 23 S.W.3d
18, 23 n.5 (Tex. Crim. App. 2000).

 Moreover, appellant's reliance on Fiore v. White is misplaced. Fiore was
convicted under a Pennsylvania statute that prohibits "operating a hazardous waste"
facility without a "permit." Fiore v. White, 531 U.S. 225, 226 (2001). Fiore did not
involve an element of a statutory defense to an offense, which is the argument in this
case. It addressed the possession of a permit, one of the basic elements of the
offense of unlawfully operating a hazardous waste facility without a permit. See id.
at 227-29. The Fiore Court reiterated that the due process clause of the Fourteenth
Amendment forbids a state from convicting a person of a crime without proving the
elements of that crime beyond a reasonable doubt. See id. at 228-29 (citing Jackson,
443 U.S. at 316). 

 We have already determined that the facts of this case supported a finding of
all elements of money laundering. Appellant's acts were prohibited. Having proved
the elements of money laundering, the due process clause, as argued by appellant,
was not implicated. See id.

 Furthermore, while it is a defense to prosecution for money laundering "that the
person acted with intent to facilitate the lawful seizure, forfeiture, disposition of funds
or other legitimate law enforcement purpose pursuant to the law of this state or the
United States," Tex. Pen. Code Ann. § 34.02(c) (Vernon 2003), appellant had an
opportunity to present his defense to the jury requiring the State to disprove the
defense beyond a reasonable doubt, see Wilson, 777 S.W.2d at 825, but chose not
to do so. During the jury charge conference the trial court inquired as to whether or
not the defendant would be requesting a defense charge. The State explained that a
defense to the money laundering offense had been included, but at the request of the
defendant, had been removed from the charge. Defense counsel indicated to the court
that he had reviewed the charge, had spoken with the State's attorney, and had no
objections to the charge. Appellant's position throughout the trial had been that the
monies were from donations, not from criminal activities or proceeds of criminal
activities; therefore, the defense did not apply.

 Appellant's first issue is overruled.

IV. Restitution

 By his second issue, appellant contends the trial court abused its discretion by
ordering restitution without designating which victims identified in the indictment were
to receive restitution, and without specifying how the award was to be divided among
those victims. Appellant asserts this is a violation of article 42.01, section 1(25), of
the code of criminal procedure. See Tex. Code. Crim. Proc. Ann. art. 42.01, § 1(25)
(Vernon Supp. 2003). Appellant's argument is based on subsection 25A which states
that, in the event restitution is ordered, the judgment should reflect the amount of the
restitution and the victim's name and address. See id. § 1(25A). Subsection 25B,
however, provides, upon ordering restitution, "if the court determines that the
inclusion of the victim's name and address in the judgment is not in the best interest
of the victim," the judgment should reflect "the name and address of a person or
agency that will accept and forward restitution payments of the victim." Id. § 1(25B).

 In this case, the judgment includes, as a term of appellant's community
supervision, payment of restitution in the amount of $5,095.00 to be paid "through 
the Community Supervision and Corrections Department, 100 E. Cano St., Edinburg,
Texas." Based on the language of the judgment, it is apparent that the trial court
applied subsection 25B, not subsection 25A, of article 42.01, section 1. See id.§1. 
Reviewing this challenge to the court's restitution orders under an abuse of discretion
standard, see Cartwright v. State, 605 S.W.2d 287, 288-89 (Tex. Crim. App. [Panel
Op.] 1980), we conclude the court did not abuse its discretion by not identifying the
victim or victims in the judgment.

 Appellant relies on Campbell v. State, 5 S.W.3d 693, 699-702 (Tex. Crim. App.
1999). Campbell, however, is distinguishable from the facts of this case. In
Campbell, the judgment set out only the amount of restitution. See id. It neither
identified the victims nor the person or agency through which the money was to be
processed. See id. In the present case, while the victim or victims were not named
in the judgment, it did set out the agency that was to handle the money. Appellant
also cites Campbell for the propositions that: (1) a trial court may not order restitution
for an offense for which the defendant is not criminally responsible; (2) a trial court
may not order restitution to any but the victim(s) of the offense(s) charged; and (3) a
trial court, without defendant's agreement, may not order restitution to other victims
unless their losses have been adjudicated. See id. Appellant, however, does not
develop his argument further. See Tex. R. App. P. 38.1(h);Tong, 25 S.W.3d at 710;
Wyatt, 23 S.W.3d at 23 n.5. Appellant's second issue is overruled.

V. Double Jeopardy

 By his fourth issue, appellant contends double jeopardy bars his convictions for
money laundering and for theft of a public servant because he was convicted and
sentenced for the "same offense" in each prosecution. See U.S. Const. amend. V;
Tex. Const. art. I, § 14.

 Appellant did not raise his double jeopardy claim in the trial court. However,
"[b]ecause of the fundamental nature of double jeopardy protections, a double jeopardy
claim may be raised for the first time on appeal . . . when the undisputed facts show
the double jeopardy violation is clearly apparent on the face of the record and when
enforcement of usual rules of procedural default serves no legitimate state interests." 
Gonzalez v. State, 8 S.W.3d 640, 640 (Tex. Crim. App. 2000). In Jimenez v. State,
67 S.W.3d 493, 509 (Tex. App.-Corpus Christi 2002, pet ref'd), this Court concluded
that under Gonzalez, "[i]f a double jeopardy violation is clearly apparent, the defendant
will prevail on appeal; if a double jeopardy violation is not apparent, the defendant's
claim fails on the merits regardless of whether he objected at trial." Id. at 509 (citing
Gonzalez, 8 S.W.3d at 643). Therefore, applying Gonzalez, we now determine
whether a double jeopardy violation is clearly apparent on the face of the record.

 The double jeopardy clause protects against: (1) a second prosecution for the
same offense after acquittal; (2) a second prosecution for the same offense after
conviction; and (3) multiple punishments for the same offense. See Brown v. Ohio,
432 U.S. 161, 164-65 (1977); Jimenez, 67 S.W.3d at 510. Appellant invokes the
third protection. 

 "The double jeopardy clause of the Fifth Amendment does not restrict a
legislature from carving as many offenses as it chooses from one transaction so long
as each offense requires 'proof of a fact which the other does not.'" Jimenez, 67
S.W.3d at 510 (quoting Phillips v. State, 787 S.W.2d 391, 394 (Tex. Crim. App.
1990)); see Blockburger v. United States, 284 U.S. 299, 304 (1932). Theft by a
public servant under section 31.03 of the penal code and money laundering under
section 34.02 of the code require proof of different facts. Compare Tex. Pen. Code
Ann. §§ 31.01(3)(A), 31.03(a), 31.03(b)(1) (Vernon 2003) with Tex. Pen. Code Ann.
§ 34.02(a)(1) (Vernon 2003). Theft by a public servant requires proof of appropriation
of property without the effective consent of the owner--facts not required to be proven
for money laundering. See id. Likewise, money laundering requires proof of the
acquisition, receipt, concealment, possession, transfer, or transport of the proceeds
of criminal activity-facts not required to be proven for theft by a public servant. See
id. We therefore reject appellant's claim that he was charged with the same offense
more than once.

 Because appellant's alleged double jeopardy violation is not clearly reflected on
the face of the record before us, we hold that appellant's protections against double
jeopardy were not violated. Furthermore, timely raising his multiple punishments claim
in the trial court would have provided the trial court and the State an opportunity to
remove the basis of the objection, if it had merit; thus, serving legitimate state
interests. See Gonzalez, 8 S.W.3d at 645. Appellant's fourth issue is overruled.VI. Ineffective Assistance of Counsel

 By his fifth issue, appellant contends the trial court reversibly denied his motion
for new trial on his convictions because he was denied effective assistance of counsel. 
Specifically, appellant complains that his trial counsel: (1) failed to request a jury
instruction on the defense of law enforcement, accomplice witness, and mistake of
fact; and (2) inadequately investigated the facts and the law as to both counts.

A. Standard of Review

 We review a trial court's denial of a defendant's motion for new trial under an
abuse of discretion standard. Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim. App.
2001). In this review we do not substitute our judgment for that of the trial court, but
rather determine whether the trial court's decision was arbitrary or unreasonable. Id. 
Further, we remember that at a hearing on a motion for new trial, the trial court is the
sole judge of a witness's credibility and the weight to be given the testimony. Lewis
v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

 The standard of review for ineffective assistance of counsel is set out in
Strickland v. Washington, 466 U.S. 668, 687 (1984); Hernandez v. State, 726
S.W.2d 53, 57 (Tex. Crim. App. 1986). First, trial counsel's performance must fall
"below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. 
This deficiency must be to the extent that counsel failed to function as the "counsel"
guaranteed by the Sixth Amendment of the United States Constitution. Yates v.
State, 917 S.W.2d 915, 920 (Tex. App.-Corpus Christ 1996, pet. ref'd). A strong
presumption exists that defense counsel's conduct falls within a wide range of
reasonable representation. Strickland, 466 U.S. at 690; Dewberry v. State, 4 S.W.3d
735, 757 (Tex. Crim. App. 1999). The record must contain evidence of counsel's
reasoning, or lack thereof, to rebut that presumption. See McFarland v. State, 928
S.W.2d 482, 500 (Tex. Crim. App. 1996); Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994). Secondly, the appellant must prove that "the deficient
performance prejudiced the defense" by "a reasonable probability that, but for
counsel's errors, the result of the proceeding would have been different." Strickland,
466 U.S. at 686, 694.

 The reviewing court must presume that counsel is better positioned than the
appellate court to judge the pragmatism of the particular case, and that he made all
significant decisions in the exercise of reasonable professional judgment. Delrio v.
State, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992); Moffatt v. State, 930 S.W.2d
823, 826 (Tex. App.-Corpus Christi 1996, no pet.). Any judicial review must be
highly deferential to trial counsel and avoid the deleterious effects of hindsight. 
Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984); see Ex Parte Kunkle,
852 S.W.2d 499, 505 (Tex. Crim. App. 1993). 

 The defendant bears the burden of proving ineffective assistance of counsel by
a preponderance of the evidence. See Jackson v. State, 973 S.W.2d 954, 956 (Tex.
Crim. App. 1998). It is possible that a single egregious error of omission or
commission by counsel constitutes ineffective assistance. Thompson v. State, 9
S.W.3d 808, 813 (Tex. Crim. App. 1999).

B. Jury Instructions

1. Law Enforcement Defense Appellant contends defense counsel's assistance was ineffective because
counsel failed to ask for a jury instruction on the law enforcement defense to the
money laundering charge. "It is a defense to prosecution under [section 34.02 of the
penal code] that the person acted with intent to facilitate the lawful seizure, forfeiture,
or disposition of funds or other legitimate law enforcement purpose pursuant to the
laws of this state or the United States." Tex. Pen. Code Ann. § 34.02(c) (Vernon
2003). At the hearing on appellant's original and amended motions for new trial,
appellant's defense counsel testified he had looked at the money laundering statute
prior to trial and had gone over it with appellant. At two charge conferences and
during the hearing on appellant's motions for new trial, counsel explained he did not
include a law enforcement defense instruction because his case involved donations,
not forfeitures; thus, the defense was not applicable. Considering counsel's position
that the defense was not applicable because the monies were donations and not
proceeds of criminal activity, and presuming counsel to be better positioned than this
Court to judge the pragmatism of the case, we conclude counsel made this decision
in the exercise of reasonable professional judgment. See Delrio, 840 S.W.2d at 447;
Moffatt, 930 S.W.2d at 826.

2. Accomplice Witness

 Appellant next contends he was denied the effective assistance of counsel
because counsel failed to request an accomplice-witness instruction on both charges.

 "A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the offense
committed; and the corroboration is not sufficient if it merely shows the commission
of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). The
accomplice-witness rule reflects a legislative determination that accomplice testimony
should be viewed cautiously, because accomplices often have incentives to lie, such
as to avoid punishment or to shift blame to another person. Blake v. State, 971
S.W.2d 451, 454 (Tex. Crim. App. 1998). We determine whether any accomplice
testimony requiring corroboration has, in fact, been corroborated by eliminating from
consideration the accomplice testimony and then examining the remaining inculpatory
evidence to ascertain whether the remaining evidence tends to connect the defendant
with the offense. See McDuff v. State, 939 S.W.2d 607, 612 (Tex. Crim. App.
1997). The corroborating evidence need not directly connect the defendant to the
crime or be sufficient by itself to establish guilt. Cathey v. State, 992 S.W.2d 460,
462 (Tex. Crim. App. 1999). Article 38.14 has been satisfied if the combined weight
of the evidence tends to connect the defendant to the offense. Id.

 Even disregarding the testimony of Del Angel, there is significant corroborating
evidence to sustain appellant's convictions on both counts. See McDuff , 939 S.W.2d
at 612. Therefore, assuming without deciding that Del Angel was an accomplice, (5)
 and
that counsel's failure to request an instruction to that effect fell below an objective
standard of reasonableness, appellant has not shown a reasonable probability the
result of the trial would have been different but for counsel's failure. See Strickland,
466 U.S. at 687-88, 694.

 First, excluding Del Angel's testimony, there remains evidence in the record to
support appellant's conviction for theft by a public official of the value of $1,500.00
or more, but less than $20,000.00. Summarizing the evidence set out in detail above,
appellant met with Gomez. Appellant testified he told Gomez the drug dog had alerted
to her vehicle, and that the females and driver would possibly be charged with some
sort of crime. Appellant knew Gomez eventually donated the money to the reserve
fund. Gomez's affidavit sets out she donated $2,900.00 to the reserve fund. Gomez
was told donating the money was the best thing to do, and she thought that if she
went to court she would probably not get her money back anyway.

 Appellant spoke to Gallegos about the drugs and money found in his vehicle. 
Appellant told him to sign an affidavit stating he would donate the money. Appellant
told Gallegos that if he donated the money he could get released.

 Lozano testified appellant told him he could take his seized vehicle if he paid
$330.00. Lozano thought he was paying a fine, not making a donation. Appellant
testified the money was paid and deposited into the reserve account so it would not
go into the forfeiture fund which, he explained, was only for money seized in
connection with drugs.

 Mendoza testified appellant told him if he donated his money there would not
be an investigation, but, if he did not they would investigate and it would get worse
for him. Del Angel told Mendoza the money was drug money. Mendoza did not want
to donate the $5,000.00. Appellant testified that he met with Mendoza and told him
they would seize the money and send it over to the DEA and a forfeiture case would
be filed if he did not donate it. Appellant said he took the money as a donation. Sgt.
Pacheco testified appellant admitted people were donating money at his direction, and
took full responsibility. Appellant deposited these monies into a reserve fund, to which
only he had access. Sgt. Pacheco found it unusual that appellant always withdrew
cash from the fund. Sgt. Pacheco found no matching receipts for over $10,000.00
withdrawn from the account; Crews found no receipts for approximately $3,500.00.

 We conclude this remaining inculpatory evidence tends to connect appellant
with the offense of theft by a public servant. See McDuff , 939 S.W.2d at 612. 
Furthermore, the testimony of Mendoza, appellant, and Sgt. Pacheco that is set out
above, tends to connect appellant with the offense of money laundering. Article
38.14 has been satisfied because the combined weight of the evidence tends to
connect appellant to the offenses. Del Angel's testimony has been corroborated. See
Cathey, 992 S.W.2d at 462. Thus, even had appellant's counsel requested an
instruction to the jury that Del Angel was an accomplice, appellant has not shown a
reasonable probability the result of the proceeding would have been any different. 
Strickland, 466 U.S. at 694.

3. Mistake of Fact

 Appellant contends that through mistaken information received from Del Angel,
he formed a reasonable belief about a matter of fact that Flores, Mendoza, and Gomez
had made consensual donations rather than participate in the forfeiture process. (6) 
Appellant submits that such mistaken belief negated the culpability required for
commission of theft and money laundering; thus, he was denied effective assistance
of counsel because counsel failed to request an affirmative instruction on mistake of
fact.

 To be entitled to a mistake of fact defense, the evidence must raise an issue as
to whether the defendant mistakenly formed a reasonable belief about a matter of fact
that would negate the kind of culpability required for the commission of the offense. 
Tex. Pen. Code Ann. § 8.02 (Vernon 2003). A defendant has the right to an
instruction on any defensive issue if it is raised by the evidence, regardless of its
weight, strength, or credibility. Granger v. State, 3 S.W.3d 36, 38 (Tex. Crim. App.
1999).

 Appellant does not provide this Court with specific record references to the
evidence he contends raises a mistake of fact defense. See Tex. R. App. P. 38.1(h)
Neither does he offer a clear and concise argument for the contentions he makes. See
id. We will not make appellant's arguments for him. See Tong, 25 S.W.3d at 710;
Wyatt, 23 S.W.3d at 23 n.5; see also Brandon v. Am. Sterilizer Co., 880 S.W.2d 488, 
493 (Tex. App.-Austin 1994, no pet.) (appellate court is under no duty to make an
independent search of record for evidence supporting appellant's position).

 Nonetheless, a person commits the offense of theft if he unlawfully appropriates
property with intent to deprive the owner of the property. Tex. Pen. Code Ann. §
31.03(a) (Vernon 2003). Therefore, the culpable mental state for theft is whether
appellant intended to deprive the owner of the property. See id. A mistaken belief
that a person donated money so that he would not have to go through forfeiture
proceedings does not negate this culpable mental state. Appellant's mistaken belief
does not negate the fact that he intended to deprive the owners of the property. He
does not negate the culpable mental state required for theft.

 Additionally, the offense of money laundering requires knowing possession,
maintenance, concealment, transference or transportation of proceeds of a criminal
activity. Tex. Pen. Code Ann. § 34.02(a)(1) (Vernon 2003). The culpable mental state
for money laundering is whether appellant knowingly possessed, maintained,
concealed, transferred, or transported the monies. See id. Again, appellant's mistaken
belief that a person donated money so that he would not have to go through forfeiture
proceedings does not negate the fact that he knowingly possessed, maintained,
concealed, transferred, or transported the proceeds of a criminal activity.

 We hold that the defense of mistake of fact as to either charge was not raised
by the evidence. Moreover, even if the evidence did support a mistake of fact
instruction, appellant has not shown how defense counsel's deficient performance
prejudiced his defense to the extent that the trial's result would have been different
on either count. See Strickland, 466 U.S. at 694.

C. Investigation of Facts

 Finally, appellant contends his defense counsel did not adequately investigate
the facts of the case. (7) Specifically, appellant complains of counsel's failure to obtain
trial testimony from present Police Chief Isidro Casanova, Municipal Judge Enrique
Cantu, former City Secretary Lucinda Reyna, and former LJPD Officers Gustavo
Enrique Acosta and Juan Sotelo. Appellant also complains of counsel's failure to
review two tapes, the first of a conversation between Del Angel and appellant, and the
second of a police meeting. Appellant asserts that the testimony of these witnesses
and the tapes could have been used to impeach Del Angel's testimony. (8)

 An attorney representing a criminal defendant is charged with making an
independent investigation of the facts of the case. McFarland, 928 S.W.2d at 501. 
This encompasses the duty to conduct a legal and factual investigation and to seek out
and interview potential witnesses. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex.
Crim. App. 1990). Defense counsel should not, as a matter of course, rely on the
veracity either of his client's version of the facts or witness statements in the State's
file. McFarland, 928 S.W.2d at 501. However, the duty to conduct an investigation,
in the wake of Strickland, is not absolute. Id. Under Strickland, an attorney has the
duty "to make reasonable investigations or to make a reasonable decision that makes
particular investigations unnecessary." Id. (quoting Strickland, 466 U.S. at 691). A
decision not to investigate must be directly assessed for reasonableness in all
circumstances, applying a heavy measure of deference to defense counsel's judgment. 
Id. We will not reverse a conviction unless the consequence of the failure to
investigate is that the only viable defense available to the accused is not advanced and
there is a reasonable probability that, but for counsel's failure to investigate and
advance the defense, the result of the proceedings would have been different. Id.; see
Cantu v. State, 993 S.W.2d 712, 718 (Tex. App.-San Antonio 1999, pet. ref'd). 
Regardless of whether evidence from the witnesses and tapes identified above would
have provided impeachment testimony, the question to be answered here is whether
appellant's defense counsel was ineffective because he failed to interview these
witnesses and review the tapes, thereby precluding appellant from presenting a viable
defense. McFarland, 928 S.W.2d at 501.

 At the hearing on the motion for new trial, Casanova, Judge Cantu, Reyna,
Acosta, and Sotelo testified. Casanova testified he could not find anything on Jesus
Angel Flores in the police department records. Judge Cantu testified he had not
located Flores's name in the court records on the dates relevant to this case. Reyes
testified that in February 1998 she notarized affidavits prepared by the police
department, one for Flores and one for Gomez. Del Angel, not Perez, was with both
parties when Reyes notarized the affidavits. On cross-examination, Reyes
acknowledged there was no signature on the Flores's affidavit. Flores did not sign it
in front of her. Reyes also agreed the date on Gomez's affidavit was incorrect, a
typographical error, an oversight. Further, Flores and Gomez testified at trial.

 Acosta testified that he was called into the investigation office by Del Angel and
asked to notarize an affidavit for Mendoza. Perez was not present at that time. 
Thinking the donation "strange," Acosta contacted an assistant district attorney who
explained the procedure for seizing money. When Acosta informed Del Angel of this
discussion, Del Angel indicated he had talked to the same district attorney who told
him what he was doing was right. Acosta did not know whether he was referring to
it being right as to Mendoza or being right with reference to any type of seizures. On
cross-examination, Acosta acknowledged he did not know if the donation was
accepted solely by Del Angel or if there were others involved. When asked whether
Perez could have been involved, Acosta answered, "Everything is a possibility, sir." 
Mendoza testified at trial. 

 Sotelo was called to testify regarding the authenticity of the transcription of a
tape recording of a meeting called by Perez to determine who was leaking information
to the Texas Rangers or the FBI and the DEA. At the motion for new trial hearing,
when appellant's counsel was asked by the court if anything Sotelo said on the tape
was being relied on as exculpatory, counsel basically informed the court he did not
know.

 Appellant's defense counsel also testified at the hearing on the motion for new
trial. He stated he spent a lot of time with Perez. They went over witnesses and then
counsel would interview them. He also did discovery at the district attorney's office. 
Counsel called all witnesses he interviewed to testify. Prior to trial, Perez gave him a
tape cassette of a conversation Perez had with several police officers including Del
Angel. Perez played about a minute of the tape for him but it was not audible. Perez
played it again, and it was still inaudible. Counsel "never messed with it again." 
Perez informed counsel that the tape was of a meeting where Del Angel was accused
of stealing five thousand dollars. Counsel testified he thought he had cross-examined
Del Angel on whether he had stolen the $5,000.00 from Mendoza. Perez did not
indicate to him that there was information on the tape that would exonerate him. 
Later during the hearing, the following portion of the transcription of one of the tapes
was read into the record: "Bueno, Del Angel, on that deal, all I [Perez] can say to you
is, you know, I'll be - you know that I was in on everything." Defense counsel agreed
that the phrase, "I was in on everything" would be inculpatory. 

 Counsel did not interview Casanova or Acosta. Counsel considered calling
Acosta, but did not because appellant informed him that Acosta had some legal
problems and his attorney had told him not to testify. Counsel did not want to call a
reluctant witness, so he never interviewed him. He did, however, interview Cuellar
very extensively because Cuellar was his key or star witness. 

 Counsel noted the testimony provided by Reyna that Perez was not present
when Flores's and Gomez's affidavits were prepared, came out at trial. He further
agreed that her testimony about the mistakes made on the affidavits could have
harmed Perez. Counsel testified he did not believe the testimony of Cantu added
anything to the case and, if retried, he would still not call Cantu or the notary.

 Based on the above, we cannot find that defense counsel's failure to conduct
further investigation of the witnesses identified above or of the tapes was deficient to
the point that appellant received ineffective assistance of counsel. Defense counsel
may have concluded in his professional judgment that, based on the information
provided by appellant, see Strickland, 466 U.S. at 691 (depending on information
provided by defendant, the need for further investigation may be considerably
diminished), and his investigation of other witnesses and the district attorney, any
further investigation would not have been fruitful. Further, even were we to determine
defense counsel was ineffective because he failed to investigate, appellant has not
shown that any failure to interview witnesses or to review the tapes precluded
appellant from presenting a viable defense. McFarland, 928 S.W.2d at 501.

 Appellant did not meet his burden to prove he received ineffective assistance
of counsel. Therefore, we hold the trial court did not abuse its discretion when it
overruled appellant's motion for new trial. We overrule appellant's fifth point of error.

VII. Conclusion

 Accordingly, we affirm the judgment of the trial court. 

 NELDA V. RODRIGUEZ

 Justice


Do not publish.

Tex. R. App. P. 47.2(b).


Opinion delivered and filed

this 1st day of May, 2003.

 
1. The indictment also alleged theft from Heriberto Parra and owners unknown to the
grand jury. These names were omitted from the charge because, as the State acknowledged,
there was no evidence to support their inclusion.
2. Del Angel testified appellant wrote the following paragraph that Del Angel, in turn,
typed into the body of Mendoza's affidavit:


 I was arrested by La Joya Police and charged with Possession of Drug
Paraphernalia Public Intoxication (Under Influence of Marihuana). At the time
of my arrest, I was with Driver's name who was the driver. Shortly before
being stopped, my friend and I had been smoking marihuana. Furthermore, at
the time of my arrest, I had in my possession $50.08.00 [sic] in U.S. currency. 
Due to the fact that I have no proof that the money rightfully belongs to me,
I hereby give up the $500.8.00 [sic] (Five Thousand Eight) Dollars to the La
Joya Police Department. By doing so, I understand that said money will
become property of the La Joya Police Department and utilized for Law
Enforcement purposes. (Strike through and underlining were in original written
paragraph.)
3. At this time, Flores was on probation for possession of marihuana.
4. Paragraph one of count one of the indictment alleged a theft involving an aggregate
amount of "$20,000.00 and more, but less than $100,000.00 . . . from the owner thereof,
Oscar Cuellar, in his capacity as City Manager of the City, who had possession of and a
greater right to possession of said property than said defendant."
5. A person is an accomplice if he participates before, during, or after the commission
of the crime and can be prosecuted for the same offense as the defendant or for a lesser-included offense. Medina v. State, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999). Mere
presence during the commission of the crime does not make one an accomplice. Id. If the
evidence is clear that the witness is not an accomplice, no instruction need be given to the
jury either that the witness is an accomplice as a matter of law or in the form of a fact issue
as to whether the witness is an accomplice. Gamez v. State, 737 S.W.2d 315, 322 (Tex.
Crim. App. 1987).

6. Appellant also complains that through information provided by Del Angel, he believed
the acceptance of the donations was legal. However, testimony regarding the legality of the
donations would provide evidence that appellant had a mistaken belief of the law. See Tex.
Pen. Code Ann. § 8.03 (Vernon 2003). This is not material to the resolution of this mistake
of fact issue.
7. Appellant also claims that counsel was ineffective for failing to research relevant legal
matters which resulted in his missing key opportunities to have the court's charge present
law supporting defense theories. However, based on our analysis of appellant's challenged
jury instructions, assuming this to be true, appellant has not shown a reasonable probability
the result of the trial would have been different but for counsel's failure. See Strickland v.
Washington, 466 U.S. 668, 694 (1984).
8. Appellant also complains of failure to investigate the general fund deposit of Lozano's
$330.00 for storage fees. However, appellant provides no support for this contention. See
Tex. R. App. P. 38.1(h). Thus, we will not address it.